COMMERCIAL TRUST COMPANY OF NEW JERSEY *v.* MILLER, AS ALIEN PROPERTY CUSTODIAN.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE THIRD CIRCUIT.

No. 575.   Argued April 13, 1923.—Decided April 23, 1923.

1. A proceeding for the seizure of enemy-held property, brought by the Alien Property Custodian as delegate of the President, under

the Trading with the Enemy Act, is a purely possessory one, in which the custodian's determination that the property is so held is conclusive. P. 55. *Central Trust Co.* v. *Garvan,* 254 U. S. 554; *Stoehr* v. *Wallace,* 255 U. S. 239.

2. This is a constitutional exercise of the war power. *Id.*

3. Where securities and moneys were held by a trustee in trust for the joint account of a neutral and an alien enemy, to be delivered and paid to either upon his sole demand, or to the survivor, the Alien Property Custodian, proceeding under the Trading with the Enemy Act, was entitled to a decree requiring the trustee forthwith to transfer and deliver them all to him. P. 54.

4. How long this act should remain in force in view of the consequences of the War, is a legislative, not a judicial, question; it was not terminated by the cessation of hostilities, by the joint resolution declaring the state of war as between Germany and the United States at an end, or by the President's proclamation of peace. P. 57.

281 Fed. 804, affirmed.

APPEAL from a judgment of the Circuit Court of Appeals affirming a judgment of the District Court which required the appellant to convey, transfer, assign, deliver, and pay to the Alien Property Custodian money and property held by it as a trustee.

*Mr. Selden Bacon* for appellant.

*Mr. James A. Fowler,* Special Assistant to the Attorney General, with whom *Mr. Solicitor General Beck* was on the brief, for appellee.

MR. JUSTICE McKENNA delivered the opinion of the Court.

This is a suit under the Trading with the Enemy Act of October 6, 1917, c. 106, 40 Stat. 411, and the amendment of November 4, 1918, c. 201, 40 Stat. 1020. It was commenced by Francis P. Garvan, as Alien Property Custodian. He ceasing to be such, Thomas W. Miller was appointed his successor, and substituted as petitioner.

Section 7 of the act provides that " If the President shall so require any money or other property . . . held . . . for the benefit of an enemy", without license " which the President after investigation shall determine . . . is so held, shall be conveyed, transferred, assigned, delivered, or paid over to the Alien Property Custodian."

The act has received exposition in *Central Union Trust Co.* v. *Garvan,* 254 U. S. 554, and *Stoehr* v. *Wallace,* 255 U. S. 239, and what it authorizes, and the conditions of the exercise of its authorization determined.

Whatever problems the act presents those cases resolve. They decide that the President's power may, under § 5 [1] of the act, be delegated to and be exercised by the Custodian, and that the determination of the Custodian is conclusive whether right or wrong. And it may be exercised by forcible seizure of the property or by suit and, if by suit, the suit is purely possessory and must be yielded to; the right of any claimant being postponed to subsequent assertion. And it was decided that the Custodian acquires by suit " nothing but the preliminary custody such as would have been gained by seizure. It attaches the property to make sure that it is forthcoming if finally condemned and does no more." In other words, and in comprehensive description, the act may be denominated an exercise of governmental power in the emergency of war and its procedure is accommodated to and made adequate to its purpose, but securing, as well, the assertion of opposing or countervailing rights " by a suit in equity unembarrassed by the precedent executive determination ", and if the claimant " prevails " the property " is to be forthwith returned to him."

---

[1] By § 5 the President is in terms authorized to exercise " any " of his powers " through such officer or officers as he shall direct." By § 6 he is authorized to appoint and " prescribe the duties of " the officer to be known as the Alien Property Custodian.

These are the determining generalities, and the Circuit Court of Appeals, applying them, affirmed the decree of the District Court, adjudging, ordering and decreeing that the Commercial Trust Company of New Jersey " do forthwith convey, transfer, assign, deliver and pay to Thomas W. Miller, as Alien Property Custodian, all of the money and other property held by it under a certain trust agreement entered into on January 30, 1913 ", between the Company and Frederick Wesche and Helene J. v. Schierholz. A list of the moneys and other property was attached to the decree.

It was recited in the trust agreement that the property, which consisted of bonds, was held " for the joint account of said Frederick Wesche and Helene J. v. Schierholz, and to collect the interest to become due and payable on said bonds " for their joint account, and to deliver the bonds from time to time as requested, to either " or to the survivor of them, it being understood that the said bonds and the said interest money to be collected thereon are to be held and collected and delivered or paid over to either the said Frederick Wesche or to the said Helene J. v. Schierholz, or to the survivor of them."

In addition to the above, the following may be quoted from the opinion of the Circuit Court of Appeals:

" The Trust Company, in compliance with the provisions of the act, made a report in December, 1917, that it held stocks, bonds, and mortgages, securities and money, of the value of about $600,000, in trust, as to both principal and interest, for the joint account of Frederick Wesche, of Paris, France, and Helene J. von Schierholz, of Plaue, Germany, to be delivered and paid to either upon his or her sole demand, or to the survivor.

" Upon investigation the Alien Property Custodian determined that Wesche was a neutral and von Schierholz an alien enemy not holding a license from the President, and demanded surrender of the securities. Because the

neutral had power upon his sole order to withdraw the whole property, the Trust Company thought the Alien Property Custodian had no right to it and accordingly declined to yield possession. Because the alien enemy had like power upon her sole order to withdraw the whole property and acquire its possession, the Alien Property Custodian thought he had a right to it and accordingly demanded it. The question is, which was right?"

The court answered, the Custodian by virtue of his power under the act and the efficacy of its exercise. This appeal disputes the answer, and the contention is that the power was not exercised as required because the Custodian had not made an investigation which justified in any way "any determination that [the property] was *all* [italics counsel's] enemy property, or seizure of *all* [italics counsel's] the property as such." In support of the contention, it is urged, that no investigation was made of any interest in the property other than that of Mrs. Schierholz—none of Wesche, or none determined beyond what was shown by the report of and letter of the Commercial Trust Company. And there is also a contention that Wesche was not an enemy, and that he was given no opportunity of review, and the act, as to him, was "unconstitutional and without due process of law" and that, consequently, surrender of the property by appellant (Trust Company) under such circumstances to the Custodian, would have afforded it no defense to the claim of Wesche for such part of the property as belonged to him. The appellant accordingly did not transfer or deliver the property as so demanded, and still retains it under *supersedeas* bond.

The contentions are precluded by the cases which we have cited. As there decided, the act was of peremptory quality and effect. The suit was tantamount to physical seizure—gave preliminary custody such as seizure gives, and was intended to be not "less immediately effective than a taking with the strong hand."

It is manifest, therefore, that the defenses upon which the contentions are based were not available to either claimant of the property. And besides, under the act, it is to be remembered, the Custodian succeeds to all the rights in the property to which the enemy is entitled as completely as if by conveyance, transfer or assignment, and the Trust Company in the present case held the bonds for the joint account of Wesche and Mrs. Schierholz to be paid over to either of them. She had the power, therefore, to demand the bonds and receive them and to this power the Custodian determined he succeeded, and, therefore, exercised it. What interest Wesche had or has does not require decision, nor can the Trust Company urge it, the act requiring submission to the determination of the Custodian.

The case, therefore, has no complexity and we do not think it is necessary to trace through the elaborate argument of counsel by which he attempts to sustain the contention of the Trust Company. Its foundation is, as said by the Circuit Court of Appeals, that the Trust Company "claims the right to have property interests judicially determined by a court of equity before a right to the possession of the property can be asserted by the Alien Property Custodian." The claim is precluded, we have seen, by *Central Union Trust Co.* v. *Garvan,* and *Stoehr* v. *Wallace, supra.* Those cases decide, as we have also seen, that the suit is of as peremptory character as " seizure *in pais* " and is the dictate and provision for the emergency of war, not to be defeated or delayed by defenses, its only condition, therefore, being the determination by the Alien Property Custodian that it was enemy property. It was recognized that there is implication in the act that mistakes may be made, but the act assumes " that the transfer will take place whether right or wrong." In other words, it is the view of the opinions that the act provides for an exercise of government, but also provides, as

we have said, redress for mistakes in its exercise by the claimant of the property filing a claim under § 9, which, if not yielded to, may be enforced by suit.

The next contention of the Trust Company is that the act being a provision for the emergency of war, it ceased with the cessation of war, ceased with the joint resolution of Congress declaring the state of war between Germany and the United States at an end, and its approval by the President, July 2, 1921, and the Proclamation of Peace by the President August 25, 1921. The contention, however, encounters in opposition the view that the power which declared the necessity is the power to declare its cessation, and what the cessation requires. The power is legislative. A court cannot estimate the effects of a great war and pronounce their termination at a particular moment of time, and that its consequences are so far swallowed up that legislation addressed to its emergency had ceased to have purpose or operation with the cessation of the conflicts in the field. Many problems would yet remain for consideration and solution, and such was the judgment of Congress, for it reserved from its legislation the Trading with the Enemy Act and amendments thereto, and provided that all property subject to that act shall be retained by the United States " until such time as the Imperial German Government . . . . shall have . . . made suitable provision for the satisfaction of all claims." See *Kahn* v. *Anderson,* 255 U. S. 1, and *Vincenti* v. *United States* (C. C. A., 272 Fed. 114, and 256 U. S. 700).

*Affirmed.*