**FARMERS' LOAN & TRUST CO. v. HICKS et al. (two cases).**

(Circuit Court of Appeals, Second Circuit. July 29, 1925.)

Nos. 352, 353.

1. **War ⟨⟩12—American trustee for German insurance company, which turned over to Alien Property Custodian securities held for benefit of policy holders and creditors, was discharged from liability.**

Under Trading with Enemy Act, § 7 (e) (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d), American trustee for German insurance company, which turned over to Alien Property Custodian securities held by it for benefit of American policy holders and creditors, was relieved from liability therefor.

2. **War ⟨⟩12—Rights of American policy holders and creditors of German insurance company in securities turned over to Alien Property Custodian held amply protected.**

Where securities deposited by German insurance company with American trustee to secure American policy holders and creditors were turned over to Alien Property Custodian, rights of policy holders and creditors were amply protected by Trading with Enemy Act 1917, § 9, as amended (Comp. St. Ann. Supp. 1923, § 3115½e), and section 12, as amended (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff).

3. **War ⟨⟩12—Alien Property Custodian held entitled to possession of securities deposited by German insurance company with American trustee to secure policy holders and creditors.**

Where securities were deposited by German insurance company with American trustee to secure American policy holders and creditors, subject to large extent to control of German company, any surplus to be paid to such company, held that Alien Property Custodian was entitled to possession of securities on demand, under Trading with Enemy Act, § 17 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½i).

4. **War ⟨⟩33—Termination of war did not require Alien Property Custodian to return securities deposited by German insurance company with American trustee.**

Termination of war by joint resolution of July 2, 1921, did not take from property of German insurance company, in possession of Alien Property Custodian, its status as "enemy property," in view of Trading with Enemy Act, § 12 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff), so as to require its return to American trustee of company, under section 9 (a), as amended by Act June 5, 1920 (Comp. St. Ann. Supp. 1923, § 3115½e).

5. **War ⟨⟩12—Alien Property Custodian had all powers of common-law trustee of property except money in his possession.**

Under Trading with Enemy Act, § 12, as amended (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff), Alien Property Custodian had all powers of common-law trustee in respect of property, except money, transferred to him, with right to sell and manage as if he were absolute owner.

6. **Trusts ⟨⟩236—Trustee recovering trust fund is entitled to reimbursement for expenses therefrom.**

Trustee, who at his own expense recovers trust fund, and restores it to purposes of trust, is entitled to reimbursement out of fund, since trust estate must bear expenses of its administration.

7. **War ⟨⟩12—American trustee of securities deposited by German insurance company held not entitled to reimbursement for expenses of suits to recover securities from Alien Property Custodian.**

American trustee of securities deposited by German insurance company for benefit of

American policy holders and creditors was not entitled to recover expenses of prosecuting unsuccessful suits for return of such securities seized by Alien Property Custodian, in view of Trading with Enemy Act, § 9 (Comp. St. Ann. Supp. 1923, § 3115½e), and section 12, as amended (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff).

Appeals from the District Court of the United States for the Southern District of New York.

Two suits by the Farmers' Loan & Trust Company, individually and as trustee under certain indentures of trust between it and the Nord Deutsche Insurance Company, a German corporation, against Frederick C. Hicks, Alien Property Custodian, and another. From decrees denying defendants' motions to dismiss complaints (298 F. 758, and 2 F.[2d] 493), defendants appeal. Reversed, with directions.

These cases were argued together in this court. They are substantially the same, involving the same question of law. They will be decided in this court in one opinion.

The facts are stated in the opinion.

Emory R. Buckner, U. S. Atty., of New York City, and Dean Hill Stanley, Sp. Asst. Atty. Gen., for appellants.

Geller, Rolston & Blanc, of New York City (George S. Mittendorf, of New York City, of counsel), for appellee.

Before ROGERS, HOUGH, and MANTON, Circuit Judges.

ROGERS, Circuit Judge. These suits were instituted under the Trading with the Enemy Act and acts amendatory thereof. The Trading with the Enemy Act is the Act of October 6, 1917, 40 Stat. 411, c. 106. It was amended by the Act of July 11, 1919, 41 Stat. 35, c. 6, and by that of June 5, 1920, 41 Stat. 977, c. 241 (Comp. St. Ann. Supp. 1923, § 3115½e). The suits were brought to obtain possession of securities, and the income therefrom, in the hands of the defendants, and which were originally in the hands of the plaintiff as trustee for a German Insurance Company organized under German law, but doing business in the state of New York, and perhaps to some extent, elsewhere in the United States. The property sued for originally came into the possession of the Alien Property Custodian under an order entered in the District Court for the Southern District of New York in a proceeding instituted against this plaintiff under the Trading with the Enemy Act.

The bills of complaint in the two suits

9 F.(2d)—54

are identical, except that the bills differ in respect to the securities, for the recovery of which the suit is brought and their value, and in the fact that in one of the suits in addition to the securities named a demand is made for the recovery of $13,000 in cash and the interest which has accrued thereon, and they also differ in that in one of the bills it is alleged on information and belief that there is a large number of persons who are holders of policies for fire insurance of the German company, and who are entitled to the benefit of the deed of trust, while in the other bill the allegation is repeated in identical language, except that the persons who are alleged to be entitled to the benefit are said to be the holders of policies for marine insurance.

The plaintiff is a corporation organized and existing under the laws of the state of New York and having its principal place of business in the city of New York.

It appears that plaintiff was constituted a trustee by an indenture dated December 17, 1913, and executed by the Nord-Deutsche Versicherungsgesellschaft as party of the first part and the plaintiff as party of the second part. This Nord-Deutsche Insurance Company was carrying on the business of insurance against fire and marine risks and risks of transportation and navigation in certain parts of the United States. It desired to establish and maintain in this country a trust fund for the protection of all the holders of its policies of insurance, in addition to the deposits required to be made by it with the superintendent of insurance or other designated official of any state in which it transacted its business, and to appoint a trustee as custodian of its said trust fund. It therefore constituted and appointed, in the indenture of December 17, 1913, the Farmers' Loan & Trust Company its United States trustee, with power to receive such money, securities, and funds as the insurance company from time to time might transfer or remit to it for the uses and purposes named, and in the manner and according to the provisions set forth in the instrument.

It appears from the deed of trust that the Farmers' Loan & Trust Company held the trust fund for the following purposes:

(1) For the protection of the holders of the policies of insurance issued by the Nord-Deutsche Versicherungsgesellschaft, a German company, carrying on the business of insurance in the state of New York and elsewhere in the United States, in order that the holders of its policies in the United States

might be paid all lawful and valid claims out of the proceeds of the trust fund.

(2) To comply with the requirements of the law of the state of New York and of other states in this country in which it desired to transact business.

It appears that under this deed of trust the Farmers' Loan & Trust Company, although designated therein as "trustee," might more properly be described the "agent" of the German company—so completely is it subject to its direction and control. Thus the deed provides: "The Farmers' Loan & Trust Company is authorized and empowered with the previous consent in each case of the board of directors or the manager of the company in Hamburg, or the managers of the marine branch of the company in the United States, to sell or collect any property or security of said trust fund and to invest the proceeds of the principal thereof, and any other moneys of said trust fund, in such securities as are permitted by the law of the state of New York. * * *"

Again it provides: "The Farmers' Loan & Trust Company may, from time to time, acting under the instructions of the board of directors or the manager of the company in Hamburg, out of said funds or any part thereof, furnish means or securities for making deposits in any states or territories of the United States under the laws and regulations thereof, now existing or hereafter to be established, requiring deposits for the security of the holders of the policies of insurance of said company against marine risks. * * *"

It also provides, as is shown elsewhere in this opinion, that the Farmers' Loan & Trust Company is to pay over "all interest and income" accruing from the trust fund "to F. Hermann & Co. of New York City," the "United States managers" of the company, "until such time as the board of directors or manager of the company in Hamburg shall otherwise direct. * * *" Then it is provided how this "trust" may be terminated.

The plaintiff in its bills of complaint admits the interest of the German company, the "enemy" owner of the trust fund, for in each bill it asserts that it is entitled "to administer said trust property for the benefit of the American policy holders or creditors referred to in said deed of trust and to account to the said Nord-Deutsche Insurance Company, or whoever may be entitled to the same, for any balance remaining in its hands after the administration of the trust, and the payment of all of its costs, expenses, and compensation."

There is no proof in the record that at this time there are any American creditors or policy holders of this German corporation. The allegation in the bills is: "Plaintiff is informed and believes that there is a large number of persons who are holders of policies for marine insurance of said Nord-Deutsche Insurance Company, or otherwise creditors of said company entitled to the benefit of said deed of trust who are not enemies or allies of enemies, but the names and addresses of such person or persons are unknown to the plaintiff."

The defendants in their answer, referring to this allegation, state that "they have no knowledge with respect thereto, and therefore demand strict proof thereof," and no such proof has been presented.

But, if there are such American creditors, their rights are amply protected under the Trading with the Enemy Act. Under that act, section 9 of the original act of 1917, as amended by the Acts of July 11, 1919, 41 Stat. 35, c. 6, and that of June 5, 1920, 41 Stat. 977, c. 241, and under section 12 of the Act of 1917 as amended by Act March 28, 1918, 40 Stat. 460, c. 28 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff), ample provision is made for the protection of all creditors of the German company.

The prayer of the bill in each suit is identical, and is as follows: "Plaintiff prays that it be decreed that the property and money hereinbefore set forth, and all income and interest hereafter accruing therefrom and thereon, be delivered and paid over to it, and that the Alien Property Custodian and the Treasurer of the United States, or their successors in office, shall be directed to deliver and pay over the said property and money or the proceeds thereof to the plaintiff, and that, until there shall be a determination of plaintiff's claim or cause of action in the premises, said Alien Property Custodian and said Treasurer of the United States retain in their possession the said property and money, and that the plaintiff have such other and further relief as to the court may be just and equitable in the premises."

The defendants moved to dismiss the bills of complaint. This they did on the ground that the plaintiff had no such interest, right, or title in any of the money or other property set forth in the complaints as entitled it to the possession of the money or property claimed. The motions to dismiss were denied by the District Judge. In his opinion he said: "The government's contention, broadly speaking, is that, because a German insurance company has or may have a rever-

sionary interest in the trust funds, the trustee should be displaced by the Alien Property Custodian, who should take over the entire fund and handle it, notwithstanding that the trustee is an American trust company of good standing, and the beneficiaries are American citizens.

"It seems to me that the plain and natural method, and one which would be less likely to interfere with the affairs and rights of American citizens, would be for the trustee to administer it, and when the claims of Americans have been satisfied and the trustee's fees paid, turn over the balance, if there be any, to the Alien Property Custodian, after obtaining the certificate of the insurance department of the state of New York, and settling their accounts in an orderly way. Such a plan as this would do less violence to the rights of our citizens, and so far as I can see would involve no great risk of funds reaching any one not contemplated under the act."

The motions to dismiss having been denied, and the defendants having filed their answers, plaintiff moved the court for final hearing upon the pleadings, and upon a stipulation which had been entered into shortly after the suits were instituted. The stipulation was signed by plaintiff and the Alien Property Custodian.

[1] The plaintiff entered upon the administration of these trusts, not only several years before the United States declared war against Germany, but a considerable time before the European war began. And the property involved was not taken by the Custodian into his possession until early in the year 1921, under a decree entered on January 27, 1921. At that time the plaintiff had been performing its duties as trustee for about 10 years in one instance and for about 7 in the other. Prior to the time when it was required to turn over the property to the Custodian it had actively performed its duties as trustee, making such payments and investments generally as were required of it in the discharge of its duties under the trust deed. It explains its institution of these suits to recover possession of the trust property by saying: "The plaintiff is a corporation organized under the laws of New York, having its only places of business in that state, and the only tribunal in which it can obtain a decree protecting it against all persons who may be interested in the funds in question is the Supreme Court of the state of New York. It is entitled to have the account of its proceedings as trustee judicially settled in that court."

But the trading with the Enemy Act in section 7(e), among other things, declares: "No person shall be held liable in any court for or in respect to anything done or omitted in pursuance of any order, rule, or regulation made by the President under the authority of this act.

"Any payment, conveyance, transfer, assignment, or delivery of money or property made to the Alien Property Custodian hereunder shall be a full acquittance and discharge for all purposes of the obligation of the person making the same to the extent of same." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½d.

In view of the above provision, we confess inability to appreciate the contention of plaintiff that it is important to its own protection that the property and funds heretofore turned over by it to the Alien Property Custodian, under an order of the United States District Court, should now be returned to it by a similar order.

[2] We are equally unable to understand how any policy holder or creditor of the German company, who was not himself an "enemy" of the United States during the war, is in any manner prejudiced by the fact that this "trust fund" is held by the Alien Property Custodian or by the Treasurer of the United States. The claim of the policy holder or other creditor is preserved unimpaired, as we have pointed out, by the provisions of the Trading with the Enemy Act, and claims can be paid out of the fund held by the Custodian or by the Treasurer of the United States as fully as if the fund had continued to be held by the Farmers' Loan & Trust Company itself.

This court is, of course, not concerned with the motive which influenced plaintiff in the institution of these suits. The cases must be decided solely on the legal question involved. It was under the Trading with the Enemy Act that defendants obtained possession of this property from the plaintiff, and they are now entitled to retain it as against the plaintiff, unless it appears that Congress has given the plaintiff a right to recover it back.

Whatever right plaintiff has to maintain these suits must be found in section 9, subsection (a), of the Trading with the Enemy Act, as amended by the acts hereinbefore mentioned. It is provided:

"That any person, not an enemy, or ally of enemy claiming any interest, right, or title in any money or other property which may have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United

States, or to whom any debt may be owing from an enemy or ally of enemy whose property or any part thereof shall have been conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian or seized by him hereunder and held by him or by the Treasurer of the United States may file with the said Custodian a notice of his claim under oath and in such form and containing such particulars as the said Custodian shall require; * * * if the claimant shall have filed the notice as above required and shall have made no application to the President, said claimant may, at any time before the expiration of six months after the end of the war institute a suit in equity * * * in the District Court of the United States for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the Treasurer of the United States, as the case may be, shall be made a party defendant), to establish the interest, right, title, or debt so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment, or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the Treasurer of the United States or the interest therein to * * * and until any final judgment or decree which shall be entered in favor of the claimant shall be fully satisfied by payment or conveyance, transfer, assignment, or delivery by the defendant, or by the Alien Property Custodian, or Treasurer of the United States on order of the court, or until final judgment or decree shall be entered against the claimant or suit otherwise terminated." Comp. St. Ann. Supp. 1923, § 3115½e.

The Amendatory Act of June 5, 1920, c. 241, 41 Stat. 977, re-enacts section 9 as amended, and then provides for a return of property seized by the Custodian by order of the President, and, failing such order, allows a suit in equity to recover the property or money due, if the owner is found to have been one of eight defined classes at the time of the seizure. The plaintiff herein does not claim that it comes within any one of the eight classes named. If the plaintiff can maintain these suits, its right to do so rests solely upon section 9, subdivision (a), above set forth.

The acts give to any person claiming any right, title, or interest in any property seized by the Alien Property Custodian the right to institute a suit to have that right, title, or interest determined by the courts. They provide, further, that any person to whom a debt

may be owing by the enemy whose property may have been seized may institute a proceeding to have the debt established and paid out of the property of the particular enemy. And it is provided: "Except as herein provided, the money or other property conveyed, transferred, assigned, delivered, or paid to the Alien Property Custodian, shall not be liable to lien, attachment, garnishment, trustee process, or execution, or subject to any order or decree of any court. This section shall not apply, however, to money paid to the Alien Property Custodian under section 10 hereof." Comp. St. Ann. Supp. 1923, § 3115½e.

[3] It cannot be denied that the Custodian at the time these suits were instituted was lawfully entitled to the possession of this property.

The Central Trust Co. v. Garvan, 254 U. S. 554, 41· S. Ct. 214, 65 L. Ed. 403, was a case in which the Alien Property Custodian had obtained possession of certain securities held by the trust company as a trustee of a German insurance company for the security of its policy holders and creditors within the United States. The Custodian instituted a suit in the District Court for the Southern District of New York to compel the trust company to surrender the securities to him. The District Court, acting under section.17 of the Trading with the Enemy Act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½i) entered such a decree, which this court affirmed in 265 F. 477. The case was then taken to the Supreme Court, and was by it affirmed. The terms of the trust in that case are thus set forth in our opinion:

"It will not be necessary to set out the terms of the trusts at length; it is enough to say that, although the income of the securities is payable to the companies, and they can withdraw them, or any of them, upon substituting others equally good, and can change the trustees, still the trustees hold the securities in trust to pay the claim of any policy holder or creditor admitted to be due by the company or established by the claimant in due course of law. It is apparent that the trustees hold primarily for the benefit of the policy holders and creditors, and secondarily for the benefit of the companies; but their duties are active, and they are not merely lienholders. The companies cannot take the securities out of their possession until the rights, absolute or contingent, of all policy holders and creditors in this country are secured, and in the meantime the trustees have the active duty of collecting and paying over

the income, investing and reinvesting, and paying claims properly proved."

In the instant case the Farmers' Loan & Trust Company had in its possession certain securities, the bonds issued by certain railroad companies in the United States, and turned over to it by the German company. Under the terms of the trust the Farmers' Loan & Trust Company was to collect all interest and income accruing from this trust fund, and pay it over to F. Hermann & Co. of New York City, the United States managers of the marine branch of the company, until such time as the board of directors or manager of the company in Hamburg should otherwise direct, and thereafter to such person or persons as the board of directors or manager of the company in Hamburg should, in writing, designate and appoint to receive same. As respects the right of the Custodian to take possession of the securities, Central Trust Company v. Garvan is not distinguishable in principle. There can be no doubt that the Custodian was entitled to demand that these securities should be turned over to him and that he is in lawful possession of them under the order of the District Court pursuant to section 17 of the act.

[4] It being determined that the Custodian was entitled to the possession of the securities which were held by the plaintiff for the German corporation, and which were turned over to him under the District Court's order, the question now to be considered is whether the plaintiff is entitled to demand that the Custodian or Treasurer of the United States shall be required to surrender the securities back into plaintiff's possession.

In answering this question it is well to bear in mind that it is entirely immaterial that the Custodian obtained possession during the war period, and that the present demand is made after peace has been declared, and Germany is no longer an "enemy" of the United States.

The fact that the war was officially declared ended by the Joint Resolution of July 2, 1921, 42 Stat. 105, and that Germany has ceased to be an "enemy," does not take from the property seized its status as "enemy property." This is shown by section 12 of the Trading with the Enemy Act (40 Stat. 411, 424), which expressly provided: "After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the Alien Property Custodian or deposited in the United States Treasury, shall be settled as Congress shall direct." Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½ff.

The fact that property seized prior to the end of the war ceased to be "enemy" property after peace was declared was said by the Supreme Court in Swiss National Insurance Co. v. Miller, 267 U. S. 42, 45, 45 S. Ct. 213, 214 (69 L. Ed. 504), to be "an impossible construction of the section." And it was held in that case that the fact that an enemy corporation ceased to be an enemy when the war ended did not entitle it to a return of its seized property. The fact then that the German corporation, which the Farmers' Loan & Trust Company represents, is no longer an enemy may be disregarded. If that company was in court in its own right asking that these securities be now restored to it, the action certainly could not be maintained. Are the rights of the Farmers' Loan & Trust Company as its agent or "trustee" superior to those of its principal? For reasons presently to be stated we think not; and, unless the trust company had a right to recover these securities before peace was declared and while the war was still being carried on, we know of no reason why it has such right at this time.

The idea is without support in the authorities that the Proclamation of Peace by the President on August 25, 1921, in any way altered or narrowed the right of the Alien Property Custodian to retain the property in his possession by virtue of the provisions in the Trading with the Enemy Act. See Commercial Trust Co. v. Miller, 262 U. S. 51, 57, 43 S. Ct. 486, 67 L. Ed. 858; Kahn v. Anderson, 255 U. S. 1, 41 S. Ct. 224, 65 L. Ed. 469. The rights of the trust company in the trust fund are precisely the same now that they were prior to the adoption of the Joint Resolution of July 2, 1921.

[5] It is incontrovertible that the Alien Property Custodian was entitled to seize the trust fund at the time he obtained possession of it under the District Court's decree, which was entered during the war's continuance. Under the Trading with the Enemy Act as amended he got much more than mere possession, and became vested with all of the powers of a common-law trustee in respect of all property other than money which was required to be transferred to him. As to such property he was given the power to sell and manage the same as though he were absolute owner. Central Union Trust Co. v. Garvan, 254 U. S. 554, 569, 41 S. Ct. 214, 65 L. Ed. 403.

It being incontrovertible that the Custodian was entitled to take this trust fund from the possession of the Farmers' Loan & Trust Company, which held it as "trustee" or agent

for an enemy corporation, it seems to us equally incontrovertible that the Farmers' Loan & Trust Company, which was legally bound to surrender the trust fund, could not turn around and successfully maintain a suit to recover it back. If such a suit could not have been maintained during the period of the war, and it is clear it could not have been, the declaration of peace did not confer upon the Farmers' Loan & Trust Company the right to bring such a suit. The fund seized continued to be "enemy" property after the peace, and its status as such was in no respect altered.

[6, 7] It must be perfectly apparent that, if these bills could have been maintained prior to the declaration of peace, the purpose of the Trading with the Enemy Act would have been frustrated if the courts had the right to direct this property to be turned back by the Alien Property Custodian or the Treasurer of the United States to the plaintiff from whose possession it had been lawfully taken. And it is equally apparent that the plaintiff's right to demand the return of this property after the declaration of peace was no greater after that event than it was prior to it.

It appears that the court below in entering its decree, directing the return of the trust fund by the defendants, has in each case ordered defendants to pay plaintiff $500 out of the trust fund for its reasonable compensation and expenses in prosecuting the suit, and further decreed that defendants should pay out of the fund the sum of $5,109.10 to the attorneys for plaintiff, the same being the reasonable amount of their fees, and that defendants retain out of such fund $1,250, being their reasonable expenses incurred in and about the administration of the fund and remaining unpaid at the time of the decree.

We do not question the rule that a trustee who, at his own expense, recovers a trust fund and restores it to the purposes of the trust is entitled to reimbursement out of the fund recovered. A trust estate must bear the expenses of its administration, and, if the fund is in the hands of the court, or is under its control, the court may in a proper case allow payment out of the fund of counsel fees and necessary expenses. Trustees v. Greenough, 105 U. S. 527, 26 L. Ed. 1157. But the suits which the plaintiff instituted have not rescued the trust fund and preserved it for creditors. They were wholly unnecessary, and the rights of creditors needed no protection at the hands of the plaintiff, and could be as well asserted against the defendants as they could be against the plaintiff. The expenditures in-

volved were not incurred in the interest of the trust estate, and cannot be paid out of the trust fund which has not been benefited in any degree by this unsuccessful and ill-advised litigation.

The decrees of the District Court requiring the defendants to deliver to the plaintiff the property in their hands which is the subject of these suits, and adjudging that certain sums be paid to the plaintiff and to its attorneys, are reversed, and the court is directed to dismiss the bills of complaint.