**HICKS, Alien Property Custodian, v. BALTIMORE & O. R. CO. et al.**

(District Court, D. Maryland. February 3, 1926.)

**1. Constitutional law ⟨⊕⟩318—War ⟨⊕⟩12—Proceeding by Custodian to seize enemy held property is possessory, and determination conclusive.**

Under Trading with the Enemy Act, § 7, subd. (c), as amended by Act Nov. 4, 1918, § 1 (Comp. St. Ann. Supp. 1919, § 3115½d), proceeding by Custodian for seizure of enemy held property is a purely possessory one in which Custodian's determination that property is so held is conclusive, nor does such construction render act violative of due process clause of Const. Amend. 5, in view of Trading with the Enemy Act, § 9 (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e), preserving claimant's rights.

**2. War ⟨⊕⟩12—Finding of enemy bank's interest in stock held sufficient to entitle Custodian to issuance of certificates to him.**

Alien Property Custodian *held* to have found that enemy bank had a sufficient interest in corporate stock to support record title in its name and entitle Custodian to issuance of certificates in his name, under Trading with the Enemy Act, § 12 (Comp. St. Ann. Supp. 1919, § 3115½ff), and section 7, subd. (c), as amended by Act Nov. 4, 1918, § 1 (Comp. St. Ann. Supp. 1919, § 3115½d).

**3. War ⟨⊕⟩12—Provisions of Trading with the Enemy Act held not retroactively applied, where substantial rights in enemy held stock were seized during war.**

Trading with the Enemy Act, § 12 (Comp. St. Ann. Supp. 1919, § 3115½ff), and section 7, subd. (c), as amended by Act Nov. 4, 1918, § 1 (Comp. St. Ann. Supp. 1919, § 3115½d), relating to issuance of corporate stock in the name of Alien Property Custodian, is not retroactively applied, because under it proceedings are brought based on finding made prior to its passage that certain stock was enemy owned.

**4. War ⟨⊕⟩12—Joint resolution declaring war's end held not to preclude Alien Property Custodian from compelling issuance to him of certificates representing stock previously seized.**

Adoption of Joint Resolution of Congress July 2, 1921, declaring war ended *held* not to preclude Alien Property Custodian from thereafter proceeding under Trading with the Enemy Act, § 12 (Comp. St. Ann. Supp. 1919, § 3115½ff), and section 7, subd. (c), as amended by Act Nov. 4, 1918, § 1 (Comp. St. Ann. Supp. 1919, § 3115½d), to compel issuance of certificates in his name for stock previously seized.

**5. War ⟨⊕⟩12—Alien Property Custodian may compel issuance to him of certificates representing stock seized without surrender of old certificates.**

Under Trading with the Enemy Act, § 7, subd. (c), as amended by Act Nov. 4, 1918, § 1 (Comp. St. Ann. Supp. 1919, § 3115½d), Alien Property Custodian can compel issuance of certificates representing stock previously seized without surrender of old certificates.

**6. War ⬤⇒12—Uniform Stock Transfer Act held not to affect Alien Property Custodian's right to certificates representing stock seized.**

Maryland Uniform Stock Transfer Act, being subject to war power of Congress, *held* not to preclude Alien Property Custodian under Trading with the Enemy Act, § 12 (Comp. St. Ann. Supp. 1919, § 3115½ff), and section 7, subd. (c), as amended by Act Nov. 4, 1918, § 1 (Comp. St. Ann. Supp. 1919, § 3115½d), from compelling issuance to him of certificates representing stock previously seized, though old certificates were not surrendered.

In Equity.  Suit by Frederick C. Hicks, Alien Property Custodian, against the Baltimore & Ohio Railroad Company and others. Decree for plaintiff.

Amos W. W. Woodcock, U. S. Atty., of Baltimore, Md., and A. Henry Walter, of Washington, D. C., for petitioner.

R. Marsden Smith, of Baltimore, Md., and Daniel Willard, Jr., of New York City, for respondents.

SOPER, District Judge.  On December 20, 1917, the Baltimore & Ohio Railroad Company filed with the Alien Property Custodian a report, pursuant to the provisions of the Trading with the Enemy Act (40 Stat. 411 [Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½a et seq.]), wherein it reported that certain named persons, including the Deutsche Bank, believed to be enemies, were the registered owners of certain shares of its capital stock, and that the actual location of the certificates representing the shares were unknown to it.  Thereafter, on May 4, 1918, the Custodian made a determination and demand upon the railroad company as follows:

"I, A. Mitchell Palmer, Alien Property Custodian, duly appointed, qualified, and acting under the provisions of the Act of Congress known as the 'Trading with the Enemy Act,' approved October 6, 1917, and the executive orders issued in pursuance thereof, by virtue of the authority vested in me by said act, and by said executive orders, after investigation do determine that Deutsche Bank, whose address is Berlin, Germany, is an enemy (not holding a license granted by the President), and has a certain right, title, and interest in and to 74,126 shares of common stock standing on your books in the name of Deutsche Bank, I, as Alien Property Custodian, do hereby require that you shall convey, transfer, assign, and deliver to me as Alien Property Custodian, to be by me held, administered, and accounted for as provided by law, every right, title, and interest of the said enemy in said stock, including in respect to the said stock the right which the said enemy may have (a) to receive all notices issued by you to the holders or owners of similar stock, shares, or certificates; (b) to exercise all voting power appertaining to such stock, shares, or certificates; (c) to receive all subscription rights, dividends, and other distributions and payments, whether of capital or of income, declared or made on account of such stock, shares, or certificates."

The demand was accepted by the railroad company, and thereafter, from time to time, it paid to the Custodian various sums of money representing dividends on the stock, and, upon the surrender by the Custodian of certain certificates representing a portion of the shares, it issued in lieu thereof, at his request, new certificates in the name of the Maryland Trust Company as his depositary. But there are still outstanding a large number of other certificates of stock, the location of which is unknown, and which have never been in the possession of the Custodian. Consequently, on March 18, 1925, the Custodian, acting under the authority of the amendment to the Trading with the Enemy Act of November 4, 1918 (40 Stat. 1020 [Comp. St. Ann. Supp. 1919, § 3115½d]), issued a demand upon the railroad company requiring it to cancel upon its records all such outstanding certificates, and, in lieu thereof, to issue new certificates in the name of the trust company as depositary for the Custodian.  The railroad company having refused to comply, this suit was brought by petition to compel it to do so.  A hearing was had on petition and answer.

The railroad company defends on the ground that the investigation, by which it was determined that the Deutsche Bank was an enemy and had a certain interest in the stock, was superficial, and did not develop the real status of the stock involved.  The answer alleges that in 1903, desiring to broaden the existing market for its capital stock in Germany and in other European countries, the railroad company sought to have its stock listed on the Berlin and other German stock exchanges.  To accomplish this it was required to have its certificates indorsed in blank by a German bank so as to render them transferable by delivery and acceptable to German investors.  The Deutsche Bank assumed this duty, and the outstanding certificates in its name referred to in the petition were issued by the railroad company, indorsed by the bank, and delivered by it to investors.  The dividends were paid to the owners of the stock through the bank, upon the presentation of certificates.  The railroad

company therefore contends that the bank had no interest in the shares at any time, and, although registered on the books as the record holder, it was not intended to be the registered holder in the usual manner, nor entitled to the rights of such, but was only an instrument for listing the stock on the stock exchange, and the channel through which dividends were distributed.

[1, 2] It has been decided in the cases of the Central Union Trust Co. v. Garvan, 254 U. S. 554, 41 S. Ct. 214, 65 L. Ed. 403; Stoehr v. Wallace, 255 U. S. 239, 41 S. Ct. 293, 65 L. Ed. 604, and Commercial Trust Co. v. Miller, 262 U. S. 51, 43 S. Ct. 486, 67 L. Ed. 858, that a proceeding for the seizure of enemy held property, brought by the Custodian, is a purely possessory one, in which the Custodian's determination that the property is so held is conclusive; and that, although the act provides for an ex parte executive seizure without prior judicial determination of enemy ownership, there is no violation of the rights of the owner, if a citizen, under the due process clause of the Fifth Amendment, since ample provision is made under section 9 of the act (Comp. St. 1918, Comp. St. Ann. Supp. 1919, § 3115½e) whereby any claimant who is neither an enemy nor an ally of an enemy may establish his right in a court of equity, and compel the return of the property, if wrongfully sequestered. Hence the allegations of the answer, in so far as they attempt to question the correctness of the determination of the Custodian, are irrelevant. But the railroad company claims that, although the Custodian determined that the bank was an enemy, he did not find as a fact that the bank owned the corpus of the stock, but merely that it had "a certain right, title, and interest in and to" the shares. It is apparent, however, when the determination and the demand of the Custodian, which constituted parts of one and the same document, as hereinbefore set out, are considered together, that the right, title, and interest of the bank which was determined and demanded by the Custodian, included all of the substantial rights of stock ownership, comprising as it did the right to receive notices from the railroad company to shareholders, the right to exercise the voting power of the stock, and the right to receive all distributions, whether of capital or income, declared or made on account of the stock. As was said in 14 Corpus Juris, 844: "The principal rights of stockholders in ordinary business or trading corporations are to attend and vote at corporate meetings; to take part in the election of directors; to participate in dividends and profits, and to receive their proportionate share of the corporate property, or to proceeds upon dissolution or winding up of the corporation and after payment of the debts. * * * Other rights which stockholders may possess are for the most part merely incidental and auxiliary to the aforegoing."

Manifestly the Custodian found the interest of the bank in the stock broad enough to support the record title in its name. Moreover, if the averments of the answer are considered apart from the Custodian's determination and demand, it is clear that the bank had the right to register the shares in its name, and that this right was included in the demand of the Custodian upon the bank to transfer to him its every right, title, and interest in the stock. The railroad company in the past has itself recognized this fact, for it has canceled certain certificates standing in the name of the bank when presented by the Custodian, and has issued new ones in his name. This action was taken in accordance with section 12 of the act as originally passed (40 Stat. 423), which provided that it should be the duty of every corporation within the United States, issuing shares representing beneficial interests, to transfer the shares or certificates upon its books into the name of the Custodian, upon demand, accompanied by the presentation of the certificates, so that, as the law at first stood, the Custodian was not entitled to the cancellation of old, and the issuance of new, certificates for the stock in suit because the outstanding certificates were not presented. Subsequently, by the amendment of November 4, 1918, section 7c of the act (Comp. St. Ann. Supp. 1919, § 3115½d) was changed so as to provide that, whenever any property consists of shares of stock in a corporation, it shall be the duty of the corporation to cancel upon its books all shares of stock standing in the name of any person who shall have been determined by the President, after investigation, to be an enemy, and which shall have been required to be transferred to the Custodian, or seized by him, and, in lieu thereof, to issue new certificates for the shares to the Custodian. This section as amended clearly covers the case at bar.

[3] The railroad company contends, however, that the amendment may not be retroactively applied because it does not clearly appear that Congress so intended. But the Custodian does not seek to give the amendment a retroactive effect. He petitions the court, after its passage, to require the defend-

ant to comply with its terms. It is true that it is sought to apply the terms of the amendment to the finding and determination of the commissioner made prior to its passage, but a statute is not made retroactive merely because it draws upon antecedent facts for its operation. Cox v. Hart, 260 U. S. 427, 43 S. Ct. 154, 67 L. Ed. 332.

[4] The railroad company further contends that, since the war is over, the Custodian may no longer take any action which would affect the possible rights of those whose rights were not affected by what he did during the war, and that, if the Trading with the Enemy Act or the Joint Resolution of Congress of July 2, 1921 (42 Stat. 105), should be regarded as conferring such power upon the Custodian, the act or resolution to this extent is unconstitutional. It has already been shown that the substantial rights in the stock had been seized during the period of the war. To these rights the record title was merely incidental. Moreover, the contention is contrary to the decision of Commercial Trust Co. v. Miller, 262 U. S. 51, 43 S. Ct. 486, 67 L. Ed. 858. It was there contended that the act, being a provision for the emergency of war, ceased with the Joint Resolution of Congress of July 2, 1921, declaring the state of war at an end. But the court held that the power which declared the necessity is the power to declare its cessation, and what the cessation requires. The power is legislative and not judicial. Congress reserved from its legislation the Trading with the Enemy Act and the amendments, and provided that all property subject to that act should be retained by the United States until the German government should make suitable provision for the satisfaction of all claims. The respondent seems to rely upon the fact that in such cases as Application of Miller (C. C. A.) 288 F. 760, and In re Miller (C. C. A.) 281 F. 765, the rights of the Custodian enforced since the expiration of the war had been created before the end of the war. Such is the fact also in the case at bar, in view of the determination by the Custodian of possession by the bank of substantial rights in its original determination and demand.

[5] The defendant also contends that, if section 7c as amended be interpreted in connection with section 12 of the original act, there is no requirement for the issuance of new certificates without the surrender of the old ones. It is obvious, however, that the amendment of November 4, 1918, changes the law so that a production of the old certificates as the basis for the issuance of new is

10 F.(2d)—39

no longer required, and such was the decision in Miller v. Kaliwerke (C. C. A.) 283 F. 746, and in Columbia Brewing Co. v. Miller (C. C. A.) 281 F. 289.

[6] Finally, there is no merit in the contention that, by reason of the provisions of the Uniform Stock Transfer Act (Annotated Code of Maryland, article 23, §§ 51 to 73), the title to a certificate and to the shares represented thereby can be transferred only by delivery of the certificate. It is the unquestioned purpose of this legislation to facilitate the free transferability of stock certificates and to render them as nearly negotiable as their nature will permit. But this state statute must, of course, yield to the war power of Congress, which cannot be limited or controlled by state legislation. Northern Pacific Ry. Co. v. North Dakota, 250 U. S. 135, 39 S. Ct. 502, 63 L. Ed. 897.

An order granting the relief prayed will be signed.