### BALTIMORE & O. R. CO. et al. v. SUTHER-LAND, Alien Property Custodian.

Circuit Court of Appeals, Fourth Circuit.
April 12, 1927.

No. 2516.

1. War ⟂12—Alien Property Custodian's demand during war for interest of enemy alien in railroad stock held to support action for certificates (Trading with the Enemy Act, § 17 [Comp. St. § 3115½i]).

Alien Property Custodian's demand during war for the undefined right, title, and interest of enemy alien in certain railroad stock *held* sufficient demand for the corpus of the shares to support an action under Trading with the Enemy Act, § 17 (Comp. St. § 3115½i), to compel issuance of certificates.

2. War ⟂12—Enemy alien bank's ownership of stock standing in its name held not open in Alien Property Custodian's action to compel issuance of new certificates (Trading with the Enemy Act, § 17 [Comp. St. § 3115½i]).

Where answer in Alien Property Custodian's action under Trading with the Enemy Act, § 17 (Comp. St. § 3115½i), to compel railroad to issue new certificates representing stock standing in the name of an enemy alien bank, did not suggest that bank was not true owner, question of ownership could not be litigated.

In Error to the District Court of the United States for the District of Maryland, at Baltimore; Morris A. Soper, Judge.

Action by Howard Sutherland, as Alien Property Custodian, against the Baltimore & Ohio Railroad Company and the Bankers' Trust Company of New York. Judgment for plaintiff, and defendants bring error, writ of error being treated as an appeal by the court. Affirmed.

Daniel Willard, Jr., of New York City, and R. Marsden Smith, of Baltimore, Md., for plaintiffs in error.

A. Henry Walter, of Washington, D. C. (A. W. W. Woodcock, U. S. Atty., of Baltimore, Md., and Dean Hill Stanley, Sp. Asst. Atty. Gen., on the brief), for defendant in error.

Harold W. Bissel, of New York City, amicus curiæ, for Deutsche Bank.

Before WADDILL and PARKER, Circuit Judges, and WEBB, District Judge.

PARKER, Circuit Judge. This was a suit instituted by the Alien Property Custodian, under section 17 of the Trading with the Enemy Act of October 6, 1917, c. 106 (40 Stat. 411, 425 [Comp. St. § 3115½i]), against the Baltimore & Ohio Railroad Company and the Bankers' Trust Company of New York. A decree was entered, directing that the railroad company cancel upon its books certain shares of stock standing in the name of alien enemies, and issue in lieu thereof and deliver to the Alien Property Custodian new certificates in his name, and that the trust company countersign these certificates when so issued. To review this decree, the railroad company and the trust company have filed a writ of error, which we will treat as an appeal. 43 Stat. 941 (Comp. St. § 1649b); National Surety Co. v. Board of Education (C. C. A. 4th) 15 F.(2d) 993. We think, however, that all of the questions presented have been completely determined by the decisions of the Supreme Court in the cases of Great Northern Ry. Co. et al. v. Sutherland, 47 S. Ct. 315, 71 L. Ed. ——, decided January 17, 1927, Central Trust Co. v. Garvan, 254 U. S. 554, 41 S. Ct. 214, 65 L. Ed. 403, Stoehr v. Wallace, 255 U. S. 239, 41 S. Ct. 293, 65 L. Ed. 604, and Commercial Trust Co. v. Miller, 262 U. S. 51, 43 S. Ct. 486, 67 L. Ed. 858.

From the petition it appears that the railroad, pursuant to the provisions of the Trading with the Enemy Act, filed with the Alien Property Custodian, at various times during the war with Germany, reports showing that a number of persons, believed to be enemies, were the registered owners of shares of its capital stock, setting forth the number of shares owned by each. By far the greater number of the shares so reported, and involved in this proceeding, stood and still

stand upon its books in the name of the Deutsche Bank of Berlin, Germany. Upon receipt of these reports, the Custodian made demand upon the railroad for the shares of stock therein referred to; all of the demands being made prior to the official termination of the war, the one covering most of the shares on May 4, 1918. All were in exactly the same form as that passed upon and set forth in full in the opinion in the Great Northern Case heretofore mentioned. All were entitled "Demand by Alien Property Custodian for Property," all quoted the same extracts from the law and regulations, and all made the same requirements as did the demand in that case. After the war the Custodian served upon the railroad notices reciting the seizure of the stock under the demands theretofore made, and requiring the railroad to cancel the stock upon its books and in lieu thereof to issue new certificates to the Custodian.

The railroad's answer substantially admitted the facts alleged in the petition, but pleaded that the Deutsche Bank had no interest in the stock registered in its name, but had allowed it to be so registered to facilitate its transfer on foreign exchanges and to encourage investment by foreign buyers. It was pleaded that in 1903 the railroad, desiring to broaden the market for its capital stock in Germany and other European countries, sought to have its stock listed on the Berlin and other German Stock Exchanges, and to accomplish this found it necessary to have the certificates indorsed by a German bank, so as to render them transferable by delivery and satisfactory to German investors; that an agreement was thereupon entered into between the railroad and the bank, pursuant to which certificates were registered in the name of the bank on the books of the railroad and were indorsed by the bank; that funds to pay the dividends on this stock were placed with the bank by the railroad, and the dividends were paid by the bank to the holders of the stock on the presentation of the certificates. The railroad averred, therefore, that the bank at no time had any interest in the stock, but that it was at all times the property of the holders of the certificates, whose names were to the railroad unknown. Decree was entered for complainant on the petition and answer, and the only questions presented are whether the demands made on the railroad during the war constituted a valid seizure of the stock as enemy-owned property, and whether the facts averred with respect to the ownership of the stock listed in the name of the

18 F.(2d)—36

Deutsche Bank constitute a defense to this suit. As stated above, we think that the decisions of the Supreme Court which we have cited support the decree in favor of complainant.

[1] The case was argued before us prior to the decision in the Great Northern Case, and the point chiefly stressed was that the demand of 1918 was not sufficient to effect a seizure under the statute, because it was a demand, not for the corpus of the shares, but for an undefined right, title, and interest of an alien enemy, who, the railroad contends, is shown to have had no right, title, or interest therein. This, we understand, is precisely the question which was passed upon in the Great Northern Case. In stating the contentions of the appellant in that case, the court said:

"They insist that the determination of some interest is not equivalent to determining that the shares belong to or are held for the enemy; that any interest held by the enemy, however remote or contingent, might satisfy such a determination, and yet the shares in fact belong to and be held for another, not an enemy; that a demand upon the corporation to assign such an undefined interest is not a demand that the shares themselves be transferred; and that this interpretation of the document is supported by the fact that the Custodian made, at the time, no effort to obtain a new certificate, and in fact expressly indicated that he was not making any such effort."

And after a discussion, in which was set forth portions of the executive order of February 26, 1918, quoted in the demand, the court said:

"Following the provisions of section 3 (d) of the Executive Order, the Custodian enumerated in its demand upon the Great Northern substantially every right which the sole owner of shares could exercise, except the right to receive a certificate representing the stock and the right to dispose of the same. His request should be construed as a demand for delivery of the shares, because it extended to everything which the legislation permitted prior to the amendment of November 4, 1918 [40 Stat. 1020]. The Custodian sought possession, not title. Central Trust Co. v. Garvan, 254 U. S. 554, 566, 569, 41 S. Ct. 214, 65 L. Ed. 403. The term 'seizure,' as used in this connection, connotes merely the taking of possession. Hence there was no occasion to define the extent of the enemy's ownership. The demand operated as a symbolic seizure."

Under the authority of this decision, we think there can be no doubt that the demand

in the case at bar effected a seizure of the stock in question as enemy-owned property. Other contentions of the defendants, to the effect that they could not be required to issue new certificates without the surrender of the old, and that to construe the act to require this would deprive them of due process, are also answered by the Great Northern decision, and we need not dwell upon them here.

In a supplemental brief, filed with leave of court since the decision in the Great Northern Case, defendants seek to distinguish the case at bar from that case, by calling attention to the allegations of their answer to the effect that the Deutsche Bank owned no interest in the stock, and that same was registered in its name as a mere matter of convenience. It must be borne in mind that the fact is admitted that the railroad company reported the Deutsche Bank to the Alien Property Custodian as the registered owner of the shares standing in its name, without suggesting at that time that the bank was not in fact the owner thereof, and that the Custodian made demand therefor in a form that has been held to be a valid seizure of the corpus of the stock as enemy-owned property.

[2] Until the answer was filed in this case, it was not suggested that the Deutsche Bank was not in fact the owner of the stock, and the only question presented by the contention of defendants is whether in this proceeding, brought to secure certificates for stock validly seized, the question of ownership can be litigated. That question, it seems to us, has been answered in the negative by the Supreme Court so clearly as not to admit of further discussion.

In Central Trust Co. v. Garvan, supra, 254 U. S. 554, 41 S. Ct. 214, 65 L. Ed. 403, the Alien Property Custodian had instituted proceedings to obtain possession of securities in the hands of plaintiffs in error, as trustees, who denied that the funds were held for the benefit of an enemy, and set up a trust agreement under which they held the securities for the benefit of the American policy holders and creditors. The Custodian moved for a decree for possession upon the pleadings. The court held that he was entitled to the decree, that the proceeding was a mere possessory one, and that claims to the property in behalf of persons not alien enemies should be asserted in accordance with the provisions of section 9 of the Act (Comp. St. § 3115½e). The point involved is thus stated in the opinion of the court:

"As is obvious from the statement of the pleadings, the libels are brought upon the theory that these are purely possessory actions, and that for the purposes of immediate possession the determination of the Enemy Property Custodian is conclusive, whether right or wrong. The claimants, on the other hand, set up substantive rights, and seek to have it decided in these suits whether the funds are enemy property in fact, and whether they have not the right to detain them."

The court pointed out that Congress had power to provide for immediate seizure in war times of property supposed to belong to the enemy, that it could authorize seizure through legal process as well as seizure in pais, that the demand by the Custodian was a proper one, and was a determination within the meaning of the act, and that a proceeding under section 17 was a proper one to enforce the demand. It then dealt with the contention that the only property seizable under the act was enemy property, and that the determination made under the act prior to demand was not binding in a proceeding under section 17. In answer to this contention, the court said:

"But it is said that the subject of the section is enemy property only, and therefore that the determination cannot be final in its effect. Day v. Micou, 18 Wall. 156 [21 L. Ed. 860]. And it is true that it is not final against the claimant's rights. Upon surrender the claimant may at once file a claim under section 9, [and] if he satisfies the representative of the President may obtain a return, and, if he does not obtain it in 60 days after filing his application, or forthwith, if he has given the required notice, but filed no application to the President, may bring a suit to establish his rights in the District Court, in which case the property is to be retained by the Custodian until final decree. These provisions explain the initial words of section 7 (c) as saving the ultimate rights of the claimant, while the determination of the President still may be given effect to carry out an immediate seizure for the security of the government until the final decision upon the right. The reservation implies that mistakes may be made, and assumes that the transfer will take place, whether right or wrong. * * * The present proceeeding gives nothing but the preliminary custody such as would have been gained by seizure. It attaches the property to make sure that it is forthcoming, if finally condemned, and does no more."

In Stoehr v. Wallace, 255 U. S. 239, 41 S. Ct. 293, 65 L. Ed. 604, the court again carefully considered the right to a judicial de-

termination of the question of ownership before seizure, and reaffirmed the doctrine announced in the case of Central Trust Co. v. Garvan. The court said:

"That Congress in time of war may authorize and provide for the seizure and sequestration through executive channels of property believed to be enemy-owned, if adequate provision be made for a return in case of mistake, is not debatable. Central Union Trust Co. v. Garvan, supra. There is no warrant for saying that the enemy ownership must be determined judicially before the property can be seized, and the practice has been the other way. The present act commits the determination of that question to the President, or the representative through whom he acts; but it does not make his action final. On the contrary, it distinctly reserves to any claimant, who is neither an enemy nor an ally of an enemy, a right to assert and establish his claim by a suit in equity, unembarrassed by the precedent executive determination. Not only so, but pending the suit, which the claimant may bring as promptly after the seizure as he chooses, the property is to be retained by the Custodian to abide the result, and, if the claimant prevails, is to be forthwith returned to him. Thus there is provision for the return of property mistakenly sequestered, and we have no hesitation in pronouncing it adequate, for it enables the claimant, as of right, to obtain a full hearing on his claim in a court having power to enforce it, if found meritorious."

In Commercial Trust Co. v. Miller, 262 U. S. 51, 43 S. Ct. 486, 67 L. Ed. 858, the Custodian brought suit under section 17 to obtain the possession of property held in trust for an alien enemy and another. The trust company contended that the property was not owned by an alien enemy, and that the Custodian had not made an investigation which justified him in so determining. The court said:

"The contentions are precluded by the cases which we have cited. As there decided, the act was of peremptory quality and effect. The suit was tantamount to physical seizure, gave preliminary custody such as seizure gives, and was intended to be not 'less immediately effective than a taking with the strong hand.' * * * The suit is of as peremptory character as 'seizure in pais' and is the dictate and provision for the emergency of war, not to be defeated or delayed by defenses; its only condition, therefore, being the determination by the Alien Property Custodian that it was enemy property. It was

recognized that there is implication in the act that mistakes may be made, but the act assumes 'that the transfer will take place, whether right or wrong.' In other words, it is the view of the opinions that the act provides for an exercise of government, but also provides, as we have said, redress for mistakes in its exercise by the claimant of the property filing a claim under § 9, which, if not yielded to, may be enforced by suit."

In the light of the foregoing decisions, there can be no doubt that the decree of the District Judge should be affirmed. The demand of May 4, 1918, was sufficient as a determination that the property was enemy-owned, and as effecting a seizure of the corpus of the stock standing in the name of the Deutsche Bank. This is settled by the Great Northern Case. The defense that the stock did not in reality belong to the Deutsche Bank, but was owned by other unascertained persons, cannot be set up in this proceeding under section 17 of the act, but the rights of such persons must be asserted in proceedings under section 9. This is settled by the cases of Central Trust Co. v. Garvan, Stoehr v. Wallace, and Commercial Trust Co. v. Miller. There was no error, and the decree of the District Court is affirmed.

Affirmed.