# Commonwealth, on Relation, et al. v. Von Zedtwitz, et al.

(Decided June 25, 1926.)

## Appeal from Jefferson Circuit Court (Chancery Branch, Second Division).

1. War—Alien Property Custodian, Under Trading with the Enemy Act, is Vested with Powers of a Common-Law Trustee as to Property Coming Into His Possession (Trading with Enemy Act, Sections 7, 12 [U. S. Comp St. Ann. Supp. 1919, Sections 3115½d, 3115½ff]).—Under Trading with the Enemy Act, sections 7, 12 (U. S. Comp. St. Ann. Supp. 1919, sections 3115½d, 3115½ff), the Alien Property Custodian is vested as to property, other than money, which comes into his possession, with powers of a common-law trustee, who takes and holds legal title to property, beneficial interest of which is in another.

2. War—Under Trading with the Enemy Act, Alien Property Custodian May Dispose of Property in His Possession and Retain Proceeds Subject to Rights of Claimants (Trading with the Enemy Act, Sections 7, 12 [U. S. Comp. St. Ann. Supp. 1919, Sections 3115½d, 3115½ff]).—Trading with the Enemy Act, section 7, 12 (U. S. Comp. St. Ann. Supp. 1919, sections 3115½d, 3115½ff), confer on the Alien Property Custodian, not only custody and control of property of alien enemies, but right to dispose of it and hold proceeds subject to rights of claimants.

3. Escheat—Trading with the Enemy Act Took from Commonwealth no Right to Escheat Lands of Alien, but Required Suit Therefor to be Brought in Federal Court (Ky. Stats., Section 388; Trading with the Enemy Act, Sections 7, 12 [U. S. Comp. St. Ann. Supp. 1919, Sections 3115½d, 3115½ff]).—The Trading with the Enemy Act, sections 7, 12 (U. S. Comp. St. Ann. Supp. 1919, sections 3115½d, 3115½ff), took from the Commonwealth no right of escheating lands of an alien, under Ky. Stats., section 338, but required suit therefor to be brought in the federal court.

4. Pleading.—The best test of the nature and character of a suit is relief sought by petition or other pleading as expressed in its prayer.

5. Courts—Under Trading with the Enemy Act, Actions Concerning Either Title or Possession of Property Must be Brought in Federal Courts (Trading with the Enemy Act, Sections 7, 12 [U. S. Comp. St. Ann. Supp. 1919, Sections 3115½d, 3115½ff]).—Under the Trading with the Enemy Act, sections 7, 12 (U. S. Comp. St. Ann. Supp. 1919, sections 3115½d, 3115½ff), the Alien Property Custodian has almost absolute ownership of seized property, and actions concerning either title or possession of seized property must be commenced in the federal court.

6. War—Trading with the Enemy Act Held Not Invalid, Within United States Constitution (U. S. Comp. St. Ann. Supp. 1919, Section 3115½a et seq.).—Trading with the Enemy Act (U. S. Comp. St. Ann. Supp. 1919, section 3115½a et seq.); enacted under power of Congress to give the chief executive power to take the person and confiscate property of an enemy, held not invalid, within United States Constitution.

FRANK E. DAUGHERTY, Attorney General, WOODWARD, WARFIELD & HOBSON, JOHN MARSHALL, Jr., and LESLIE W. MORRIS for appellant.

HUMPHREY, CRAWFORD & MIDDLETON and CHARLES G. MIDDLETON for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

This proceeding by the Commonwealth, on relation of the Attorney General, was instituted in the Jefferson circuit court against appellee, Von Zedtwitz, and the trustees of an estate passed by the will of his mother, to escheat a large tract of land in the suburbs of Louisville, Jefferson county, on the ground of alienage, pursuant to the provision of section 338, Kentucky Statutes, reading:

"If real estate within this Commonwealth shall pass to a nonresident alien by descent or devise, the same may, for the period of eight years next after the final settlement of the estate of the decedent from whom it was acquired, be held and alienated by such nonresident alien. If the heir or devisee aforesaid be a minor, the real estate aforesaid may be held for his benefit by a guardian or curator, and may be sold by proper proceeding had in conformity with the laws regulating sales of infants' real estate, if commenced within the period first above specified."

The alien property custodian intervened, averring that his predecessor in office in 1919, under the "Trading with the Enemy Act," passed by Congress in 1917, a war time measure, delivered to Von Zedtwitz and the trustees holding for his benefit, a notice that it had been determined by the property custodian that Von Zedtwitz, whose address is and was "Germany," is an enemy not holding a license granted by the President, and has a

certain right, title and interest in and to the estate of Elizabeth Baroness Von Zedtwitz, deceased, and required the trustees in possession of the property to deliver the same to the alien property custodian who seized the same as the property and estate, in America, of Von Zedtwitz, including the land located in Jefferson county, which is now the subject of this litigation, and has since held and administered the same under and pursuant to the "Trading with the Enemy Act," as amended. The intervening petition, after averring that the state courts had no jurisdiction and that the federal district courts had and have exclusive jurisdiction in all such cases where the alien property custodian had seized the property, prayed that the proceeding be dismissed with cost. Appellee, Von Zedtwitz, and his trustees filed answer denying the right of the Commonwealth to escheat the property, and, further pleaded that the Jefferson circuit court was without jurisdiction to hear and determine the matter, since the property was in the custody and control of the alien property custodian, pursuant to the "Trading with the Enemy Act," setting up the notice given by the alien property custodian to Von Zedtwitz and his trustees and the seizure of the property by the alien property custodian under the act, concluding with this averment: "And thereupon and thereby there was seized into possession and control and has ever since continued in the possession and control of the said alien property custodian all of the right, title and interest of the said Waldemar Conrad Von Zedtwitz, in and to the estate of the said Elizabeth Baroness Von Zedtwitz, deceased, who was the same person mentioned in the petition herein as having left a last will and testament, and said property so seized being, among others, the property mentioned in the petition herein." A demurrer by the Commonwealth to the intervening petition of the alien property custodian and to the first paragraph of the answer of the appellee, Von Zedtwitz, and his trustees, was overruled and the petition dismissed for want of jurisdiction of the court to hear and determine the cause, and this appeal is by the Commonwealth asking this court to hold that the act of Congress was not intended to and does not vest absolute and exclusive judisdiction in the federal courts and direct the chancellor to assume jurisdiction and proceed to hear and determine the case upon its merits.

The Baroness Von Zedtwitz before her marriage was Miss Caldwell, a Louisville girl. She became the wife of Baron Von Zedtwitz, a citizen of Prussia, more than thirty years ago, and moved to and took up her residence in that country. She died on December 11, 1911, the baron having predeceased her, but she was survived by a son, Waldemar Conrad Von Zedtwitz, then an alien fourteen years of age, and since held to be an alien enemy. The baroness devised a large estate, including the lands in controversy, in trust for her son, the appellee. That part so devised is covered by the 9th item of the will of the baroness, reading:

> "Ninth: All the rest, residue and remainder of my estate, except as hereinafter stated, I give, bequeath and devise to my trustees hereinafter named, in trust to hold, invest, reinvest and keep the same invested, to collect the rents, issues and profits thereof and to pay over the net income therefrom to my said son, Waldemar Conrad Von Zedtwitz, until he reaches the age of thirty years, except as hereinafter set forth, and thereupon to transfer the whole of such property and any unpaid income to him absolutely and forever, or should he die before attaining such age, then to transfer and distribute such property, with any accumulated interest, to such person or persons as he may direct by his last will and testament, and should he not have any will and testament, then to transfer and distribute the same to and among his lawful issue *per stirpes* and not *per capita* in equal shares."

The foregoing provision of the will covers and includes the lands in Jefferson county which the Commonwealth seeks to escheat.

It is provided by the "Trading with the Enemy Act," which we shall hereafter call the act, section 12 (U. S. Compiled Statutes, Anno 1919, Supplement 3115½ff), that:

> "The alien property custodian shall be vested *with all of the powers of a common-law trustee* in respect to all property, other than money, or which has been or shall be required to be conveyed, transferred, assigned, delivered, or paid over to him in pursuance of the provisions of this act, and in addi-

tion thereto acting under the supervision and direction of the President, and under such rules and regulations as the President shall prescribe, shall have power to manage such property and do any act or things in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, and exercise any rights or powers which may be or become appurtenant thereto or to the ownership thereof in like manner as though he were the absolute owner thereof. . . . After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the alien property custodian or deposited in the United States Treasury, shall be settled as Congress shall direct; provided, however, that on order of the President as set forth in section nine hereof, or of the court, as set forth in sections nine and ten hereof, the alien property custodian or the treasurer of the United States, as the case may be, shall forthwith convey, transfer, assign, and pay to the person to whom the President shall so order, or in whose behalf the court shall enter final judgment or decree, any property of an enemy or ally of enemy held by said custodian or by said treasurer so far as may be necessary to comply with said order of the President or said final judgment or decree of the court; and provided further that the treasurer or property custodian shall, as provided in section ten hereof, repay to the licensee any funds deposited by said licensee (40 Stat. 432, 460).''

No doubt can be entertained but that it was the purpose of Congress plainly expressed in this act, that the alien property custodian should be vested with all the powers of a common-law trustee with respect to all property, other than money, which came into his possession. Such a trustee takes and holds the legal title to property, the beneficial interest of which is in another. Manifestly the act confers upon the alien property custodian (hereinafter called custodian), not only the custody, management and control of the property but the right to sell and dispose of the same and receive and hold the proceeds subject to the rights of the several claimants, if any, as they later appear. The act further provides:

"*The sole relief and remedy* of any person having *any claim to any* money or other property

heretofore or hereafter conveyed, transferred, assigned, delivered, or paid over to the alien property custodian, or required to be seized by him, shall be that provided by the terms of this act, and in the event of sale or other disposition of such property by the alien property custodian, shall be limited to and enforced against the net proceeds received therefrom and held by the alien property custodian or by the treasurer of the United States.''

The extent of the custodian's title and right to seized property is fixed in the act, which the Supreme Court, in the case of Commercial Trust Company of New Jersey v. Miller, 262 U. S. 51, construed and held valid, saying:

"*And, besides, under the act, it is to be remembered the custodian succeeds to all the rights in the property to which the enemy is entitled as completely as if by conveyance, transfer or assignment,* and the trust company in the present case held the bonds for the joint account of Wesche and Mrs. Scheirholz to be paid over to either of them.''

Appellant contends that the chancellor construed the act erroneously in reaching the conclusion that it vested exclusive jurisdiction to hear and determine claims to and against property seized by the alien property custodian in the federal courts, and that the state courts were without jurisdiction in such matters. It also contends that it is attempting by this suit to exercise a sovereign prerogative of the state, namely, the right to divest an alien of title or any interest which he may hold in lands, within its borders; that it is not deprived of its sovereign prerogative to escheat lands by the enemy act, placing property in the possession of the custodian; that to ascribe to the act the meaning and power found by the chancellor would result in two things: 1, it must divest the Jefferson circuit court of its jurisdiction to try this suit to acquire title to Kentucky land; and 2, it must confer this jurisdiction, theretofore existing *solely* in that court, on the United States district court for the district of Columbia. Further arguing, counsel for appellant say. ''The successful assertion of the claim is automatically followed by the acquisition of *possession*. Now, that is just what the decree in the present suit cannot do. The state can escheat no more than the alien has. Therefore,

it could not secure possession, if successful in this suit, for the *possession,* though not the title, to Von Zedtwitz's interest is in the custodian, not in him. Nor could the decree operate on the custodian's possession of Von Zedtwitz's interest, for, until he intervened, he was not before the court, and could not be brought before it. Under the act the custodian only gets *possession,* constructive or actual; therefore, the remedy created against him is only one for the acquisition of possession, for nothing more can be secured from him than he has.''

An attempt is made to distinguish between the possession which the custodian has, and the title, interest or right which the state is attempting to escheat as the property of Von Zedtwitz, the alien, it being said that the act does not prohibit the institution and trial of an action like this in the state courts to determine the right of the Commonwealth to escheat the property and to escheat it, even if the property itself is in the actual possession of the custodian, who holds it for the use and benefit of the rightful owner, be he Von Zedtwitz, his trustees or the Commonwealth of Kentucky; that the question of possession can be later litigated with the custodian in the federal court, if the Commonwealth is successful in this escheat proceeding. It is also argued by appellant that the custodian is a mere trustee, holding the possession of the property and not the title; that possession is not sought or involved in this litigation but only the title, and that when the title is determined by the escheat suit, then the Commonwealth, if it should be adjudged entitled to the property, may proceed in the federal court as directed by the act and obtain the possession. The best test of the nature and character of a suit is the relief sought by the petition or other pleading as expressed in its prayer. The prayer of this petition reads: ''Wherefore, plaintiff prays that the said 537 acres of land hereinbefore described be escheated to the Commonwealth of Kentucky, and that the Commonwealth of Kentucky be adjudged to be the owner entitled to the *immediate possession* thereof; and that the defendants, Waldemar Conrad Von Zedtwitz, United States Trust Company of New York and Henry Cachard, each be adjudged to have no interest in said described property or in any part thereof. It prays for all other proper equitable relief.''

Certainly the prayer seeks absolute title to the 537 acres of land described in the petition, the Common-

wealth asking to be adjudged the owner and entitled to the immediate possession thereof. It is not title only that the appellants seek but title and *possession* in the same manner that an individual suing in trespass to try title with prayer for such relief subjoined.

What right or title has the custodian in seized property? Is it merely possessory? No, it is almost if not absolute control and ownership. The act says: "The custodian shall be vested with all the powers of a common-law trustee over all property seized and shall *have power to manage such property and do any act or thing in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, and exercise* any right or powers which may be or become appurtenant thereto or to the ownership thereof *in like manner as though he were the absolute owner thereof.*" Speaking of these provisions of the act the circuit court of appeals, third circuit, in United States v. Chemical Foundations, 5F (2nd) 191, decided March 26, 1925, said:

"While it gave the custodian the same custodial powers which it had previously vested in him, Congress gave him additional powers over seized enemy property to meet a war situation which had arisen since the date of the original enactment and to meet other war situations as they should arise in the future. It did not limit these powers to the sale of the seized property, but gave the custodian the broad 'power to . . . make any *disposition* thereof *dis ponere,* to displace. As though this were not enough, the provision continues: 'disposition thereof, by sale, or otherwise.' . . . But when disposed of by sale Congress sought to confer upon the custodian still broader powers by using terms which in themselves seem to confer a power almost without limit. They are: 'Power to . . . make any disposition thereof, by sale or otherwise, . . . in like manner as though he were the absolute owner thereof.'"

Again, in United States v. Securities Corporation, 4 Fed. (2nd) 619 (Court of Appeals of District of Columbia), it was said:

"Indeed, the property of any enemy or ally of enemy, seized under the Trading with the Enemy.

Act, so far as its return is concerned, *is in a state of confiscation, since Congress specifically reserved to itself its future disposition.* The property here in question, concededly enemy property, would be, but for section 9, the property of the United States, subject to whatever disposition Congress might deem proper. *The seizure of the funds in question divested the German government of all title or interest therein,* and their subsequent disposition is a matter with which it is not concerned.''

When property is seized under the act, the custodian continues to possess, hold and control it absolutely against any and all claimants until Congress makes disposition thereof, as it may by confiscation or otherwise, and all claimants to the whole of any estate seized, or to any interest therein, must proceed in the federal district court, the act providing:

"The sole relief and remedy of any person having any claim to any money or other property heretofore or hereafter conveyed, transferred, assigned, delivered or paid over to the alien property custodian, or required so to be, or seized by him, shall be that provided by the terms of this act. . . . *Except as herein provided, the money or other property conveyed, transferred, assigned, delivered or paid to the alien property custodian shall not be liable to lien, attachment, trustee, process, or execution, or subject to any order or decree of any court.''*

The act considered as a whole appears to make no distinction between the title and the possession of seized property in requiring actions concerning either title or possession to be commenced and practiced in the federal courts rather than in the state courts.

The war powers of Congress under the Constitution are broad and comprehensive. The Congress may pass an act giving the chief executive or other officer, power to take the person and confiscate the property of an enemy wherever found in the United States. Pursuant to this plenary power Congress passed the Trading with the Enemy Act of 1917, and we can not discern anything in the act in conflict with the Constitution of the United States.

Answering the argument that the act was unconstitutional the Supreme Court of the United States, in Stoecher & Sons v. Wallace, Custodian, 255 U. S: 239, said:

"The Trading with the Enemy Act, whether taken as originally enacted, Oct. 6, 1917, c. 106, 40 Stat. 411, or as since amended, March 28, 1918, c. 28, 40 Stat. 459; November 4, 1918, c. 201, 40 Stat. 1020; July 11, 1919; c. 6, 41 Stat. 35, June 5, 1920, c. 241, 41 Stat. 977, is strictly a war measure and finds its sanction in the constitutional provision, article 1, section 8, clause 11, empowering Congress 'to declare war, grant letters of marque and reprisal, and make rules concerning captures on land and water.' Brown v. United States, 8 Cranch. 110, 126; Miller v. United States, 11 Wall. 268, 305.''

See Central Union Trust Co. v. Garven, Custodian, 254 U. S. 554; and Trust Commercial Trust Company v. Miller,.262 U. S. 51.

The impelling thought which brought forth the act of 1917 was the sequestration of enemy property in this country during the war so as to prevent it being used to the economic advantage of the enemy, but since the war is over claims for loss of property against the German government, amounting to many millions of dollars, necessitates the further holding and perhaps eventual application of funds arising from the sale of alien property in the possession of the custodian in satisfaction of these claims, if the German government does not adjust the same, and the act has been so amended since the close of the war as to authorize the custodian to hold the property seized and possessed by him "until such time as the imperial German government . . . shall have . . . made suitable satisfaction of all claims."

The act took away from the Commonwealth of Kentucky no right it had of escheating the lands in question, but only required it to institute and prosecute any such action in the federal district courts, where not only the right of escheat may be adjudged, but the right and possession of the custodian may at the same time be determined and finally settled. Congress undoubtedly had the war power of sequestration or even confiscation of alien enemy property in the manner proposed by the act, and if this be conceded it also possessed the power to specify

the courts in which questions concerning the sequestered property should be litigated, either affecting title thereto or possession thereof. Plainly the letter of the act prohibits the interference of state courts, as the sovereign may do in giving its consent to be sued, and vested the federal district court with exclusive jurisdiction in all matters affecting the right, title and possession of property properly seized by the custodian.

All other questions are reserved.

Judgment affirmed. Whole court sitting. Chief Justice Thomas dissenting.