Argued December 5, 1929; submitted on briefs on reargument June 6; affirmed June 17; rehearing denied July 10, 1930

SUTHERLAND, Alien Property Custodian, v. WICKEY et al.

(289 P. 375)

*G. E. Hamaker* and *A. D. Leedy,* both of Portland, for appellant Walker.

*Thomas Mannix* of Portland for appellant Wemme.

*John R. Latourette* of Portland for respondent.

COSHOW, C. J. Wickey, not having appealed, is conclusively deemed to be satisfied with the judgment. His failure to appeal is tantamount to a confession that he converted the property as alleged in the complaint: *Coast Engine & Machine Works v. Barbee,* 130 Or. 159 (279 P. 264).

Both parties have challenged the sufficiency of the complaint. The complaint alleges the capacity of plaintiff, the incorporation of the E. Henry Wemme Co.; the seizure of the stock in said corporation belonging to the alien legatees; the principal property belonging to said corporation, alleging the value thereof and consequently the approximate value of the shares of stock of which plaintiff owned 46 shares as Alien Property Custodian of the United States; the appointment of defendant Wickey as attorney at law and his authority and commission to sell the interest of plaintiff in said E. Henry Wemme Co. at its market value; the

purchase of said stock by said defendant Wickey with the cooperation and help of defendants Walker and Wemme; the allegation of the conspiracy by the defendant with detailed statement of the scheme whereby the 26 shares of defendant Wemme were purchased for the sum of $140,000, far above its market value, in order to procure from defendant Wemme consent to sell the 46 shares owned by plaintiff at the price of $2,200 a share, far below their market value; the plan and work of defendants in aiding defendant Wickey to purchase said stock. The complaint concludes with this allegation:

"That the fair market value of said stock of this plaintiff at the time of the conversion aforesaid, was the sum of $3,842.30, per share, or a total fair market value of $168,745.80; that the amount paid to plaintiff was the sum of $101,200, and that plaintiff has been damaged in the sum of $67,545.80, being the difference in the fair market value of said stock and the amount received by him."

No motion was made to make the complaint more definite and certain or to question its sufficiency, but appellants demurred as stated above. No extended discussion is necessary to hold that the complaint states sufficient facts to constitute a conversion on the part of defendant Wickey and that he was abetted, aided and assisted in the commission of said tort by defendants Walker and Wemme. It is apparent from the brief statement given above that the complaint alleges conversion and the grossest kind of fraud on plaintiff by the defendant Wickey with the help and support of his codefendants.

■ It is contended by the appealing defendants that plaintiff was without capacity to sue. There is no merit in this contention. Plaintiff is the holder and

owner of the stock under the Trading with the Enemy Act. He is an express trustee and as such is authorized by the law of this state to sue in his own name. Or. L., § 29.

■ The contention that there is a defect of parties is also without merit. That contention is based upon the fact that the three German legatees are in law the owners of the capital stock held by plaintiff, and as such are the real parties in interest. The stock belongs to the United States and stands in the name of the plaintiff as the Alien Property Custodian: *Central Union Trust Co. v. Garvan,* 254 U. S. 554, 569, 41 S. Ct. 214, 65 L. Ed. 403; *Commercial Trust Co. v. Miller,* 262 U. S. 51, 43 S. Ct. 486, 67 L. Ed. 858. The German citizens, who eventually may become the owners of the 46 shares of stock by the grace of congress and sufferance of the United States of America, do not and did not at the time this action was commenced have any interest which they could assert in this action: *U. S. v. Chemical Foundation,* 272 U. S. 1, 47 S. Ct. 1, 71 L. Ed. 131; *Mutzenbecher v. Ballard,* 16 Fed (2d) 173. Not until the property has been delivered to them by the Alien Property Custodian are they entitled to maintain an action for ownership or possession.

■ ■ The other grounds of the demurrer, namely, that the circuit court of this state has no jurisdiction of the subject-matter of the action is also without merit. Plaintiff was the legal owner and holder of the 46 shares of stock converted wrongfully by defendant Wickey. Plaintiff had the same right to the benefit and protection of the courts of the state as though he owned the property in his individual capacity.

"It is argued that the cause of action arises purely and solely out of the provisions of an act of congress,

and can only be prosecuted in the courts of the United States, the state courts having no jurisdiction over the subject. * * *

"In the opinion of the court, in *Lathrop v. Drake*, [91 U. S. 516, 23 L. Ed. 414], it was taken for granted, and stated, that the state courts had jurisdiction; but as the question was not directly involved in that case, it was more fully considered in *Eyster v. Gaff* (ante, 403), and it was there decided that a state court is not deprived of jurisdiction of a case by the bankruptcy of the defendant, but may proceed to judgment without noticing the bankruptcy proceedings, if the assignee does not cause his appearance to be entered, or proceed against him if he does appear. * * *

"The same conclusion has been reached in other courts, both federal and state, which hold that the state courts have concurrent jurisdiction with the United States courts of actions and suits in which a bankrupt or his assignee is a party. * * *

"The assignee, by the 14th section of the Bankrupt Act, 14 Stat. at L., 522, R. S., sec. 5046, becomes invested with all the bankrupt's rights of action for property, and actions arising from contract, or the unlawful taking or detention of or injury to property, and a right to sue for the same. The actions which lie in such cases are common law actions, ejectment, trespass, trover, assumpsit, debt, etc., or suits in equity. Of these actions and suits the state courts have cognizance. Why should not an assignee have power to bring them in those courts, as well as other persons? Aliens and foreign corporations may bring them. The assignee simply derives his title through a law of the United States. Should not that title be respected by the state courts? * * *

"When we consider the structure and true relations of the federal and state governments, there is really no just foundation for excluding the state courts from all such jurisdiction.

"The laws of the United States are laws in the several states, and just as much binding on the citizens

and courts thereof as the state laws are. * * * Legal or equitable rights, acquired under either system of laws, may be enforced in any court of either sovereignty competent to hear and determine such kind of rights and not restrained by its constitution in the exercise of such jurisdiction. Thus, a legal or equitable right acquired under state laws, may be prosecuted in the state courts, and also, if the parties reside in different states, in the federal courts. So rights, whether legal or equitable, acquired under the laws of the United States, may be prosecuted in the United States courts, or in the state courts, competent to decide rights of the like character and class; subject, however, to this qualification, that where a right arises under a law of the United States, congress may, if it see fit, give to the federal courts exclusive jurisdiction'': *Claflin v. Houseman,* 93 U. S. 130 (23 L. Ed. 833, 837).

*Youghiogheny & Ohio Coal Co. v. Laserich.* 171 Wis. 347 (176 N. W. 855).

It is contended that the acts of congress designated ''Trading with the Enemy Act'' gives to the federal courts exclusive jurisdiction of cases arising under said acts. But there is no doubt that the state courts have jurisdiction of the case at bar: 28 U. S. Code Ann., § 371, note 2; 26 R. C. L. 1454, § 59; 15 C. J. 1155; *Kamboris v. O.-W. R. & N. Co.,* 75 Or. 358 (146 P. 1097); *Adskim v. O.-W. R. & N. Co.,* 129 Or. 169, 174 (276 P. 1094); *Mutzenbecher v. Ballard,* above.

The vice of defendants' contention is in assuming that the instant action springs from Trading with the Enemy Act. A state court does not have jurisdiction of cases prosecuted to determine the validity of claims against the custodian or for property in his custody: *Commonwealth v. Von Zedtwitz,* 215 Ky. 413 (285 S. W. 224). Neither the title nor the possession of the property is involved in the instant case.

All of the defendants dealt with plaintiff in unqualified recognition of his capacity and authority. Defendants Walker and Wickey were agents and employees of plaintiff. Defendant Wemme's relations with plaintiff were in his capacity of custodian. None of the defendants can question plaintiff's possession or title to the property converted. No federal question is involved. The fact that plaintiff derives his interest in the property from a federal statute does not preclude a state court from exercising its ordinary functions. No case which supports that contention has been cited. I have not been able to find such a case. The following cases recognize the right of the custodian to avail himself of the aid of state courts in the performance of his duties: *Youghiogheny & Ohio Coal Co. v. Lasevich,* 171 Wis. 347 (176 N. W. 855). In that case a demurrer to the complaint was sustained on the ground of defect of parties because the Alien Property Custodian was not made a party defendant.

*In re Shafer's Estate,* 50 S. D. 232 (209 N. W. 355), the circuit court was reversed because the Alien Property Custodian was not made a party. That case involved the right of alien legatees to receive the legacies provided by will. The court does not intimate that it was without jurisdiction because the Alien Property Custodian was a necessary party. On the contrary it uses this language:

"If there was a question as to the validity of the bequests, before the validity could be adjudicated, it was necessary that the court have before it the parties adversely interested, in this case the alien property custodian, so that he might defend the rights of the government and of the aliens."

The case of *Miller v. Paul,* 237 Ill. App. 166, is analogous. In that case the Alien Property Custodian insti-

tuted a suit to foreclose a mortgage on real property. The court entertained jurisdiction. If the state courts do not have jurisdiction of the instant case the Illinois courts did not have jurisdiction of the case of *Miller v. Paul,* above. Plaintiff Miller was then alien property custodian.

"Where a right of action, given by a statute of the United States, is in advancement of a common-law right, existing independently of the legislation of congress in pursuance of the powers delegated by the constitution of the United States, the concurrent jurisdiction of the state courts is not taken away": 15 C. J. 1156, note 97.

The Trading with the Enemy Act is not involved in the instant action. The state should not deny the Alien Property Custodian access to its courts. He is empowered to hold the property as a common-law trustee. To entertain jurisdiction when invoked by the custodian is no interference with federal affairs.

"The alien property custodian shall be vested with all of the powers of a common-law trustee in respect of all property, other than money, * * * and * * * shall have power to manage such property and to do any act or things in respect thereof or make any disposition thereof or of any part thereof, by sale or otherwise, * * * *in like manner as though he were the absolute owner thereof*": Trading with Enemy Act, 50 United States Code Annotated, § 12, pp. 278, 279.

There are no restrictions in regard to the courts to which the Alien Property Custodian may apply for help and protection.

■ That the federal courts have exclusive jurisdiction of claims against the Alien Property Custodian is settled law. But that law does not deprive state courts of jurisdiction conferred by the constitution or by the

law of the state, although a claim against said custodian is indirectly involved: *Miller v. Clausen,* 299 Fed. 723. From page 727 of that opinion we take this language:

"The contention that the county court of Morrill county had no jurisdiction because of the provisions of the Trading with the Enemy Act is not sound. That act did not take away from the county court its peculiar jurisdiction to determine who were the heirs of Andrew Hansen and to adjudicate their status as such."

This case was appealed to the supreme court of the United States and there dismissed on motion of appellants.

It is likewise true that the exclusive jurisdiction vested in federal courts over claims to property seized by said custodian does not take from the circuit courts of this state their general jurisdiction over torts vested in them by the constitution and laws of the state. *In re Schaefer's Estate,* 182 N. Y. S. 732, the alien property custodian was permitted to intervene and file objections to the account of the executors and trustees. In the same case, 180 N. Y. S. 638, the Alien Property Custodian was permitted to intervene and file objections to said account nunc pro tunc.

*Kahn v. Garvan,* 263 Fed. 909, was a "Suit by Arthur A. Kahn, individually and as trustee under a deed of trust * * * against Francis F. Garvan, as Alien Property Custodian, and others. On motion by the Alien Property Custodian to dismiss the bill for want of equity. Bill dismissed, unless plaintiff amends." From page 912 we take this language:

"In *Keppelmann v. Keppelmann,* [91 N. J. Eq. 67] 108 Atl. 432, the Court of Errors of New Jersey entertained such a bill filed by a trustee asking for instructions, and advised him that he should distribute the rest to the Alien Property Custodian as cestqui que

trust. The trustee might perhaps file this bill in the New York courts, have his accounts stated, and get binding instructions; but it does not follow that he may not file a bill here as well.''

*Keppelmann v. Keppelmann* cited in the foregoing quotation was a ''Bill by Alfred J. Keppelmann and others, trustees, against A. Mitchell Palmer, Alien Property Custodian, and others. Decree for plaintiffs (89 N. J. Eq. 390, 105 Atl. 140), and defendants appeal. Reversed.'' Certiorari was denied by United States Supreme Court: 252 U. S. 581. (40 S. Ct. 392, 64 L. Ed. 727).

 Both of the defendants appealing stress the assigned error based on denying their separate motions for an involuntary nonsuit, and refusal to instruct a verdict in their favor, claiming there is no material evidence tending to prove either of the defendants guilty of conversion. There is no contention on the part of either that the appealing defendants are not guilty if they abetted, aided or assisted their codefendant Wickey to convert the property. The contention of the appealing defendants is that there is no evidence tending to prove that they did help or otherwise contribute to the conversion by their codefendant Wickey of the corporate stock of the E. Henry Wemme Co., owned by the Alien Property Custodian.

In considering the testimony claimed by plaintiff to connect defendant Walker with the conversion of the corporate stock by Wickey it should be kept in mind at all times that Walker was the trusted employee of plaintiff. Walker was secretary of the E. Henry Wemme Co., appointed to such place by the directors selected by the Alien Property Custodian. Walker was proxy representing the 46 shares of the capital stock

in the E. Henry Wemme Co., owned by plaintiff, and voted those shares of stock at the stockholders' meetings under the direction of plaintiff. He was requested by plaintiff to cooperate with plaintiff in the *sale* of the stock. It is elementary that an agent authorized to sell property can not lawfully become the buyer from himself as agent. Defendant Walker must have known that: 2 C. J. 700, § 358; *Dias v. Favell-Utley Realty Co.*, 126 Or. 227 (269 P. 207).

Defendant Walker assisted in purchasing the stock held by some four different stockholders, agreeing to pay $4,000 per share therefor. He cooperated with Wickey in the purchase of the stock. He testified as follows in that regard:

"Q. Telegram suggested that you cooperate fully with Judge Wickey, did you cooperate with him as requested?

"A. Yes, sir.

"Q. In the sale of the stock?

"A. Yes, sir."

But Wickey sold no stock. On the contrary, he purchased the stock. Instead, therefore, of Walker cooperating with Wickey in the sale of the stock, he cooperated with him in the purchase of the stock. When plaintiff requested him for a report he made it in the following language:

"1927 Mar 24 AM 9 08

CB 196 28 Govt 3 Extra

WO Washington DC 24 1146A

Dow V. Walker, Secretary the Henry Wemme Co.
1005 Chamber of Commerce Bldg.
Portland, Org.

Please forward me full report regarding terms of sale price of stock commissions paid in sale of Wemme property to Equitable Savings and Loan Company,

Howard Sutherland,
Alien Property Custodian."

Defendant Walker's answer is as follows:

"L927 Mar 24 PM 7 36

CB 120 28 NL Portland Org S 24
Howard Sutherland
Alien Property Custodian
Washington D. C.

Wickey on way east with full and complete report stop Wemme transaction perfectly regular and after conference with Wickey will be glad to furnish any additional information desired.

Dow V. Walker."

Walker knew that Wickey was buying the stock. He testified in this regard as follows:

"Q. Did you know at that time (February 18, 1927) that Wickey purposed to buy the stock himself?

"A. Yes, sir.

"Q. Did you know the price he was paying?

"A. Yes, sir."

Walker knew when he sent the telegram quoted above that Wickey was buying the stock owned by the Alien Property Custodian for $2,200 a share. He also knew that he had been buying up a few shares for Wickey, paying $4,000 per share. Walker, therefore, could not help knowing that the Alien Property Custodian was being badly swindled in parting with the shares of stock owned by him. Walker knew that the Alien Property Custodian was being thus swindled by his own attorney. Walker as secretary of the E. Henry Wemme Co. was an employee of plaintiff and it was his duty to have informed him of what Wickey was doing. Not a word of information does he give to his employer. When requested to state what the Alien Property Custodian's stock had been sold for he evaded the question instead of honestly giving him the facts.

But there is more evidence of defendant Walker's participation in the conversion of these shares of stock

by defendant Wickey. Wickey purchased all the shares of the stock in the E. Henry Wemme Co. without expending a dollar of his own. Plaintiff, in order to facilitate the liquidation of his shares of stock, gave to his attorney, defendant Wickey, a transfer of the shares duly subscribed leaving the name of the purchaser to be written in the transfer when that purchaser should be known. Defendant Wickey wrote in his own name. With the help of defendant Walker, said Wickey purchased the shares of stock owned by four other stockholders as aforesaid. By paying defendant Wemme $140,000 for his 26 shares Wickey induced Wemme to give his assent, as attorney in fact for his sisters and brother in Germany, to the sale of plaintiff's 46 shares of stock for $101,200. Plaintiff would not sell the shares of stock seized from alien enemies without the consent of the alien owners or their duly authorized agent. Defendant Wemme was such agent of the alien owners of the 46 shares held by plaintiff. He consented to the sale of the 46 shares at the price of $2,200 per share, less than half of the amount defendant Wemme was receiving for his own stock. Walker knew the price that Wickey was pretending to have sold said 46 shares, for he testified as follows:

"Q. And he had not purchased it at that time, had he? (Feb. 18, 1927.)

"A. I don't know; the information I had was these assents that he sent to the Alien Property Custodian's office, sent through my office, in which he was to buy the stock at twenty-two hundred dollars a share."

By chicanery, deceit and fraud, on plaintiff, Wickey gathered together all of the corporate stock of the E. Henry Wemme Co. with the aid of defendant Walker. Defendant Wickey had the transfers on the stock books made by the defendant Walker as secretary of

that company. Thereupon the directors, who had been serving at the request of plaintiff, resigned, and Wickey elected other directors in their stead. By the direction of said Wickey the new directors included the said defendant Walker. Walker was thereupon commissioned to borrow $200,000 in the name of the company. The $200,000 was used by Wickey for his personal advantage in the purchase of the stock from defendant Wemme and the other four stockholders, whose stock defendant Walker had secured an option on for his codefendant Wickey. Then, within a very short time, the principal property owned by the company was sold to the lender of the $200,000 for $350,000. With this additional amount thus secured on the credit of the company, Wickey remitted $101,200 to plaintiff in payment for the 46 shares of stock held by him.

Thus it clearly appears Wickey, without expending a dollar of his own property, became the owner of all the shares of stock with the aid and assistance of defendant Walker and so manipulated the property as to pay for it and reap a large profit. Without Walker's assistance he could not have accomplished his nefarious scheme because as secretary of the company Walker must make the transfers on the stock books. Defendant Walker not only did that but actively assisted in other ways to enable Wickey to enrich himself at the expense of his principal.

Defendant Walker testified that he was asked as secretary of the E. Henry Wemme company to cooperate with Mr. Welch in procuring the loan that was made and referred to above. Walker further testified that in all of his transactions in connection with his purchase of the stock in the corporation and in effecting the loan, he acted as secretary of the corporation. Now,

all the time that he was serving as secretary of the corporation, he was drawing a salary of $125 per month for his services. He further testified in regard to the loan as follows:

"Q. You negotiated this loan yourself?

"A. I spoke to Mr. Cammack first about it and then reported back to Wickey who completed the negotiations.

"Q. For how long a period of time were you engaged in these negotiations for the loan?

"A. I think it was all within a period of possibly not to exceed three or four days."

Thus, for beginning the negotiations for the loan, which he did as secretary for the company, he received the sum of $2,000, considerably more than a year's salary for doing all of the duties as secretary. It is not at all probable that any considerable part of the three or four days was occupied in beginning the negotiations for the loan, which was completed by his codefendant Wickey. It does not require any argument or elaboration to pursuade one that defendant Walker's own testimony was sufficient to justify the jury in returning a verdict against him.

Defendant Walker, as appears from the statement above, raises a number of other questions involving the admission of testimony over his objection, the refusal to receive testimony offered by him and alleged errors in giving instructions and refusing to give other instructions. All these assignments have been considered, but in the light of the testimony of defendant Walker the court will not search for technical errors in order to relieve him from the consequences of his guilt in abetting, aiding and assisting his codefendant Wickey to betray his trust, as he did in the purchase of the stock from plaintiff.

Defendant Wemme not only urges that there is no material evidence tending to prove that he participated in his codefendant Wickey's purchase of plaintiff's stock but also that other prejudicial errors were committed. As in the case of his codefendant Walker, defendant Wemme's own testimony is sufficient to warrant the jury in returning the verdict against him. For about a year he was negotiating with his codefendant Wickey for the sale of the stock held by him (Wemme) and his consent to the sale of the stock of his sisters and brother for whom he was acting as attorney in fact. Defendant Wemme claims that he notified plaintiff of his negotiations and that defendant Wickey was purchaser of the stock. The evidence adduced, however, shows that practically all of the correspondence between defendant Wemme and the Alien Property Custodian was with Casto, another agent of plaintiff and the one having the management of the corporate property in the custody of plaintiff.

Defendant Wemme testified that he knew that said Casto was working with Wickey and was a party to the plan to purchase the Alien Property Custodian's stock. Said Casto had been sent to Portland to inspect the Wemme property, but most of the time he spent in the Custodian's office in the city of Washington, D. C. It is the contention of defendant Wemme that his letters to Casto containing the information that Wickey was buying the stock he was commissioned to sell was notice to said Casto's superior, the plaintiff. But notice to an agent who himself is furthering a scheme to unlawfully profit by betraying his principal's confidence is not notice to the principal: 21 R. C. L. 910, §§ 87, 88; *Whiteside v. U. S.*, 93 U. S. 247 (23 L. Ed. 882); 2 C. J. 868, § 549; 2 C. J. 871, § 550; *Benedict v. Arnoux*, 154 N. Y. 715 (49 N. E. 326); *Innerarity v. Merchants'*

*National Bank,* 139 Mass, 332 (1 N. E. 282, 52 Amm. Rep. 710) ; *American Surety Co. v. Pauly,* 170 U. S. 156 (42 L. Ed. 987, 18 S. Ct. 552). The principle that notice to an agent whose interests are conflicting with his principal is not notice to the principal applies with special force to public agents as is clearly set out in *Whiteside v. U. S.,* above.

Defendant Wemme wrote to plaintiff twice: once October 8, 1926. This letter contains nothing that would indicate that Wickey was negotiating to buy the shares of stock owned by plaintiff. The letter is in the nature of a protest against the sale of property belonging to the E. Henry Wemme Co. for less than its value. It does inform plaintiff that defendant Wemme is the attorney in fact for his sisters and brother, whose shares of stock in the E. Henry Wemme Co. were held by plaintiff. Wemme also complained of the conduct of another party who is not involved in the instant case. Again defendant Wemme wrote to plaintiff November 22, 1926, after he had given an option to his codefendant Wickey to purchase his 26 shares of stock for the sum of $140,000 and had given his assent to the purchase of plaintiff's 46 shares of stock at the price of $2,200 per share. In this letter he informs plaintiff:

"I have made an agreement with Mr. Wickey that I will assent to the sale of said forty-six shares of stock by you to him for two thousand two hundred dollars a share, and will file such assents in due form and the Power of Attorney giving me power and authority so to do."

In the same letter he says:

"I have given to Edward W. Wickey of Washington, D. C., an option to purchase my twenty-six shares in the E. Henry Wemme company, of this city, for two thousand two hundred dollars a share."

The latter quotation from the letter was absolutely and unqualifiedly false. As further showing the guilty knowledge and conduct of defendant Wemme, after the plans of defendant Wickey had been carried out by defendants, and plaintiff was seeking to learn the truth of what had been done because of disturbing rumors that had reached him, defendant Wemme wrote to plaintiff's office as follows:

"My dear Casto, what is the use to stir up trouble now, next year is presidential election and we don't want to spill oil on fire for democrats. Our country needs a republican president."

The letter from which this excerpt was taken was dated October 21, 1927. It was doubtless written with the purpose of preventing further investigation of the conduct of defendants in reference to the purchase of the stock by defendant Wickey. There was other evidence of a similar nature indicating very strongly that Wemme was induced by the exorbitant price paid him for his 26 shares of stock to assent to the sale of the stock belonging to plaintiff for less than half of the price exacted for himself. Without defendant Wemme's assent to the sale of plaintiffs stock, it would not have been sold at the price mentioned. He intentionally misrepresented that price to plaintiff. The jury was justified in drawing the inference that the extra price paid defendant Wemme for his stock was the inducement that secured defendant Wemme's participation in swindling plaintiff.

Defendant Wemme insists that he was over-persuaded to do what he did by two government agents, namely: his codefendant Wickey and Mr. Casto, who is not a party to the case at bar. Even if Casto was guilty of conspiring with defendant Wickey in thus disposing of plaintiff's stock at little more than half

its true value, defendant Wemme is not thereby excused or justified. If he had been honest with his sisters and brother whom he represented, if he had been honest with plaintiff, defendant Wickey could not have consummated his nefarious scheme. There is no evidence in the record that said Casto ever communicated the information given him by Wemme to his principal, the plaintiff. The letter in which defendant Wemme disclosed, as he claims, defendant Wickey's scheme, was directed to said Casto.

There is some evidence tending to show that the letter written by defendant Wemme and dated December 16, 1926, to George D. Casto conveyed the information that he (Wemme) had made an option agreement with Judge Wickey. One might infer from this letter that defendant Wickey was buying the shares for his own use. Said Casto informed defendant Wemme in a letter dated December 22, 1926, that Wemme's said letter was on plaintiff's desk. Plaintiff testified that he understood from the information that had come to him that defendant Wickey was getting the stock together for the purpose of making an advantageous sale. The letter of defendant Wemme of December 16, which was said to have been put on plaintiff's desk, did bear that interpretation. Casto himself wrote to defendant Wemme to the effect that there would be no objection to defendant Wemme selling his own stock *through* defendant Wickey. The matter of the knowledge of plaintiff and the communications given by Wemme were all before the jury and its finding is conclusive on this court because the question involved was one of fact.

■ Defendant Wemme complains bitterly because said forms of agreement drafted by defendant Wickey and submitted to Wemme, which defendant Wemme did

not execute, were introduced in evidence. Said draft of agreement was introduced for the purpose of showing the negotiations pending for some months between defendants Wickey and Wemme for the purpose of disclosing defendant Wemme's knowledge of the circumstances, and his intention when taken in connection with the actual result, which was an agreement to assent to the sale of his kindreds' stock for $2,200 per share at the same time his shares were sold for over $5,384. Even if it be conceded that it was error to introduce these drafts of agreement prepared by his codefendant Wickey, yet the error was harmless. Defendant Wemme in the light of his own testimony could not have been hurt by the use of those proposed agreements. The drafts of agreement would tend to show that the inducement operating to conclude an option to Wickey was the exorbitant price he, defendant Wemme, was to receive for his own shares of stock. The articles of agreement, though not signed by defendant Wemme, were written by defendant Wickey and were admissible against Wickey: 26 R. C. L. 1033.

■ Defendant Wemme also complains because he was not allowed to show that he had sent some $32,000 to his relatives in Germany, for whom he was authorized to act. The offer did not state when nor for what purposes that money was sent to his principals. In any event he could not substitute himself for the plaintiff. Plaintiff was the appointee of the president and as such was the holder of the property belonging to the sisters and brother of defendant Wemme. Wemme's principals were citizens and residents of Germany. Plaintiff had to account to his principal, the president of the United States, for the shares of stock held by him belonging

to said German citizens. Defendant Wemme could not oust plaintiff from the duties of his office by sending money to those for whom he was an attorney in fact.

"The Alien Property Custodian, under his appointment by the President, became vested with an interest and qualified title to the moneys and property so acquired and invested him with substantial rights and interest to the exclusion of the enemy": *Youghiogheny & Ohio Coal Co. v. Lasevich,* 171 Wis. 347 (176 N. W. 855).

*Central Trust Co. v. Garvin,* 254 U. S. 554 (65 L. Ed. 403, 41 S. Ct. 214); *Commercial Trust Co. v. Miller,* 262 U. S. 51 (43 S. Ct. 486, 67 L. Ed. 858); *Mutzenbecher v. Ballard,* 16 Fed. (2d) 173; *Von Schwerdtner v. Piper,* 23 Fed. (2d) 862.

Defendant Wemme also complains of instructions given and refusal to give others. We have carefully considered all other questions raised by defendant Wemme, but are not inclined to search for errors in the light of his testimony. He, in addition to his able attorney's brief, has written a brief which we have carefully read and considered. His own defense borders very closely to a confession and avoidance.

Both of the appealing defendants have been ably defended. They have presented to this court extensive and thoroughly prepared briefs. Their attorneys have searched far and wide but have not submitted authorities or arguments that justifies or even excuses the appellants for the part they took in helping defendant Wickey to purchase plaintiff's stock for a little more than half its actual value. The testimony of the appealing defendants was of itself sufficient to warrant the jury to return a verdict against them. With that testimony before the court, it will not seek to find some technical error in order to relieve the appellants from

the liability incurred by them because of some technical error. Viewing the record of the case as a whole, we believe defendants had a fair and impartial trial and that there was ample evidence to sustain the verdict of the jury.

The judgment is affirmed.

BROWN and ROSSMAN, JJ., concur.

BEAN, J., dissents.

BELT, McBRIDE and RAND, JJ., did not participate in this opinion.

---

BEAN, J. (dissenting.) After reading the learned opinion of the chief justice, I question the authority of the state court to entertain the jurisdiction in this case. The jurisdiction of the court is challenged by a demurrer to the complaint. A careful reading of the Trading with the Enemy Act, chap. 106, vol. 40, U. S. Statute at Large, page 411, and an examination of the amendments thereto, leads me to believe it was not the intent of congress that the courts of any of the 48 states would exercise jurisdiction in any case where the Alien Property Custodian is a party interested. The statute plainly confers jurisdiction upon the United States courts.

I have examined some authorities, in the limited time I have had, which have some bearing upon the question, which I will cite for convenience. Section 371 of the 28 U. S. Jud. Code Ann., page 3, provides as follows:

"The jurisdiction vested in the courts of the United States in the cases and proceedings hereinafter mentioned, shall be exclusive of the courts of the several states:

"First. Of all crimes and offenses cognizable under the authority of the United States.

"Second. Of all suits for penalties and forfeitures incurred under the laws of the United States.

"Third. Of all civil causes of admiralty and maritime jurisdiction, saving to suitors in all cases the right of a common-law remedy where the common law is competent to give it and to claimants for compensation for injuries to or death of persons other than the master or members of the crew of a vessel, their rights and remedies under the workmen's compensation law of any State, District, Territory, or possession of the United States.

"Fourth. Of all seizures under the laws of the United States, on land or on waters not within admiralty and maritime jurisdiction; of all prizes brought into the United States; and of all proceedings for the condemnation of property taken as prize.

"Fifth. Of all cases arising under the patent-right or copyright laws of the United States.

"Sixth. Of all matters and proceedings in bankruptcy.

"Seventh. Of all controversies of a civil nature, where a State is a party, except between a State and its citizens, or between a State and citizens of other States, or aliens.

"Eighth. Of all suits and proceedings against ambassadors, or other public ministers, or their domestics, or domestic servants, or against consuls or vice consuls."

25 C. J., p. 726, § 32, reads as follows:

"Cases arising under the laws of the United States are within the jurisdiction of the federal courts and include all such as grow out of or involve the legislation of congress."

7 C. J., p. 257, § 408, is thus:

"The state courts are open to a trustee in bankruptcy seeking to enforce or to protect the interests pertaining to his trust; and accordingly such courts have jurisdiction of an action by the trustee to set

aside a transfer alleged to be fraudulent as against creditors or to recover an alleged preference, to recover property in the hands of third persons and alleged to belong to the bankrupt estate, or to collect a debt due the estate of the bankrupt.''

Plaintiff contends federal courts may have concurrent jurisdiction unless the jurisdiction is limited by law to the federal courts or unless the state courts are expressly or by necessary implication, excluded by law: 15 C. J. 1155.

In all matters pertaining to the Trading with the Enemy Act, we think the state courts are precluded from exercising jurisdiction. It is a war measure. Should the state courts render judgment and make decrees directing the affairs involved in the administration of the act, the government of the United States might be embarrassed by different rulings in the 48 states. When congress enacted section 17 of the act (U. S. Stat., vol 40, p. 425):

''That the district courts of the United States are hereby given jurisdiction to make and enter all such rules as to notice and otherwise, and all such orders and decrees, and to issue such process as may be necessary and proper in the premises to enforce the provisions of this Act, with a right of appeal from the final order or decree of such court as provided in sections one hundred and twenty-eight and two hundred and thirty-eight of the Act of March third, nineteen hundred and eleven, entitled 'An act to codify, revise, and amend the laws relating to the judiciary,' ''

there was no thought expressed or room left for implication that the state courts of any of the various states, would be authorized to construe or enforce any part of the act. The rule *expressio unius est exclusio alterius* applies.

Claimant may institute a suit in equity in the supreme court of the District of Columbia or in the district court of the United States, for the district in which such claimant resides, or, if a corporation, where it has its principal place of business (to which suit the Alien Property Custodian or the treasurer of the United States, as the case may be, shall be made a party defendant) to establish the interest, right, title or debt, so claimed, and if so established the court shall order the payment, conveyance, transfer, assignment or delivery to said claimant of the money or other property so held by the Alien Property Custodian or by the treasurer of the United States: U. S. Stat., chap. 285, vol. 42, p. 1511.

The act of October 6, 1917, chap. 106, § 17, 40 Stat. 425, provides:

"The district courts of the United States are hereby given jurisdiction to make and enter all such rules as to notice and otherwise, and all such orders and decrees, and to issue such process as may be necessary and proper in the premises to enforce the provisions of this Act, with a right of appeal from the final order or decree of such court as provided in sections one hundred and twenty-eight and two hundred thirty-eight of the Act of March third, nineteen hundred and eleven, entitled 'An Act to codify, revise, and amend the laws relating to the judiciary.'

"After the end of the war any claim of any enemy or of an ally of enemy to any money or other property received and held by the Alien Property Custodian or deposited in the United States Treasury, shall be settled as Congress shall direct."

Trading with the Enemy Act, October 6, 1917, chap. 106, sec. 12, 40 Stat. 423, Act Mar. 28, 1918, chap. 28, sec. 1; *U. S. v. Chemical Found., Inc.*, 294 Fed. 300-324.

The courts provided for in the act have exclusive jurisdiction: *Fischer v. Palmer,* 259 Fed. 355-358; *Union Bridge Co. v. U. S.,* 204 U. S. 364, 403 (27 S. Ct. 367, 51 L. Ed. 523) ; *U. S. v. Chemical Found. Inc.,* 294 Fed. 300-319.

The district courts of the United States can pass upon every question raised in this case, and having been designated as the court for construing the Trading with the Enemy Act and all transactions thereunder, and the courts having decided, as above noted, that they have exclusive jurisdiction to do so, the courts of the state of Oregon have no jurisdiction in the present case.

In the case of *Commonwealth v. Von Zedtwitz,* 215 Ky. 413 (285 S. W. 224), in a suit to escheat certain lands, formerly belonging to an alien enemy and taken into the constructive possession of the Alien Property Custodian, who appeared in the suit, pleaded that the state courts had no jurisdiction in the matter, the supreme court of Kentucky held that the state court was without jurisdiction and the federal courts only had jurisdiction over matters pertaining to the properties under the jurisdiction of the Alien Property Custodian and sustained a demurrer to the complaint. Certiorari was denied in the supreme court of the United States: 273 U. S. 735 (47 S. Ct. 243, 71 L. Ed. 866). The Court of Appeals of Kentucky, speaking by Mr. Justice Sampson, said in regard to the Trading with the Enemy Act, at page 228 of 285 S. W.:

"The act took away from the commonwealth of Kentucky no right it had of escheating the lands in question, but only required it to institute and prosecute any such action in the federal District Courts where not

only the right of escheat may be adjudged, but the right and possession of the Custodian may at the same time be determined and finally settled. Congress, undoubtedly, had the war power of sequestration or even confiscating alien enemy property in the manner proposed by the act, and if this be conceded it also possessed the power to specify the courts in which questions concerning the sequestered property should be litigated either effecting title thereto or possession thereof. Plainly the letter of the act prohibits the interference of state courts, as the sovereign may do in giving its consent to be sued, and vested the federal District Court with exclusive jurisdiction in all matters affecting the right, title, and possession of property properly seized by the Custodian.''

Under the constitution, the judicial power of the United States extends to controversies to which the United States shall be a party, whether the United States is a party plaintiff or defendant, by the Judicial Code the original jurisdiction of all suits of a civil nature at common law, or in equity, brought by the United States is vested in the district court, and so far as the United States has consented to be sued, jurisdiction of suits or claims against the United States is vested in the district court, concurrently with the court of claims. Some claims in which the United States is a party fall within the original jurisdiction of the supreme court.

In the case of *McKay v. Kalyton,* 204 U. S. 458, (27 S. Ct. 346, 51 L. Ed. 566), which originated in Oregon, the United States Supreme Court held certain lands as trustee for an Indian. In a suit to determine who the heirs of a deceased Indian were, it was held that the state courts did not have jurisdiction and the adjudication of the question by this court was reversed. In the

opinion of Mr. Justice White, discussing the case, we find the following which is somewhat suggestive in the present case, at p. 468 of 204 U. S.:

"It results, therefore, that the act of congress of 1894, which delegated to the courts of the United States the power to determine such questions, can not be construed as having conferred upon the state courts the authority to pass upon Federal questions over which, prior to the act of 1894, no court had any authority. The purpose of the act of 1894 to continue the exclusive Federal control over the subject is manifested by the provision of that act, which commands that a judgment or decree rendered in any such controversy shall be certified by the court to the Secretary of the Interior."

The United States may be a party in such a sense as to confer jurisdiction, although, not named as such on the record, as where the suit is brought in name against an officer, but the United States is the real party against whom relief is asked and the judgment will operate: 25 C. J., p. 740, § 49.

In 25 C. J., p. 732, § 43, it is stated:

"Actions by or against Officers or Agents of United States. By express statute the federal courts have jurisdiction of all suits by any officer of the United States authorized by law to sue. But there is no corresponding provision giving jurisdiction of suits against federal officers, and accordingly such jurisdiction does not exist, unless in the particular case it can be supported on some other ground, as that the suit arises under the constitution or laws of the United States, or that there is the requisite diversity of citizenship between the parties. * * * "

In 25 C. J., p. 689, § 3, we read thus:

"Independent of State Judiciary. The judiciary system of the United States is entirely unconnected with, and independent of, the judiciary of the several

states, although remedies provided by state statutes may be enforced in the federal courts if such courts have jurisdiction otherwise, and the procedure at law in the federal courts conforms to a very large extent to the procedure in the states in which the various courts sit.''

It is inappropriate for a state court to rectify or examine the acts of the Alien Property Custodian or his assistants. Such supervision would not be approved by the government of the United States.

26 R. C. L., pp. 1454, 1455, cited by plaintiff, maintains that the United States has a "prerogative right" to sue in its own courts. It is not in point.

*Claflin v. Houseman*, 93 U. S. 130 (23 L. Ed. 833), relied upon by plaintiff, upheld the right of the assignee in bankruptcy to proceed in the state court, for the reason that section 14 of the Bankrupt act, 14 Stat. at L. 522 R. S. § 5046, invests the assignee with all the bankrupt's right of action in "ejectment trespass trover assumpsit debt" etc. or suit in equity. No such provision is found in the Trading with the Enemy act. The exercise of jurisdiction by a state court in matters pertaining to the war act is incompatible with the federal plan.

Plaintiff states that state courts have jurisdiction of actions arising under Federal Employes Liability act, and cites inter alia, *Kamboris v. O.-W. R. & N. Co.*, 75 Or. 358 (146 P. 1097). Such jurisdiction of state courts is conferred by ch. 143, 36 U. S. Stat. at L., p. 291, which provides in part: "The jurisdiction of the courts of the United States under this chapter shall be concurrent with that of the courts of the several States * * *." This indicates that if the congress had intended that the state courts should exercise concur-

rent jurisdiction in cases arising in the administration of the Trading with the Enemy act, it would have been so expressed in the act.

Plaintiff cites the case of *Youghiogheny & Ohio Coal Co. v. Lasevich,* 171 Wis. 347 (176 N. W. 855), where the plaintiff-employer sued the industrial accident commission to set aside an award resulting from the death of an employee. The wife of the deceased was an alien enemy, so the commission made the award to the Alien Property Custodian. The commission demurred to the complaint because the Alien Property Custodian had not been made a party defendant. The supreme court of Wisconsin sustained the demurrer.

This is a suit by Howard Sutherland "as Alien Property Custodian for the United States of America." The right to maintain it, if it exists, is the right of a federal official and the federal court (if any) has jurisdiction thereof. See opinion of Judge Rudkin, *Sutherland v. Selling,* 16 Fed. (2d) 865.

I am unable to concur in the opinion of the chief justice.